RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0191P (6th Cir.)
File Name:  01a0191p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*       No. 99-2202

HENRY GARCIA,
  *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No.  98-81108—Robert H. Cleland, District Judge.

Argued:  March 7, 2001

Decided and Filed:  June 7, 2001

Before:  KRUPANSKY, BOGGS, and BATCHELDER,
Circuit Judges.

_____

## COUNSEL

**ARGUED:**  David B. Herrington, Bad Axe, Michigan, for
Appellant.  Kathleen Moro Nesi, ASSISTANT UNITED
STATES ATTORNEY, Detroit, Michigan, for Appellee.
**ON BRIEF:**  David B. Herrington, Bad Axe, Michigan, for
Appellant.  David J. Debold, ASSISTANT UNITED
STATES ATTORNEY, Detroit, Michigan, for Appellee.

1

---

**OPINION**

---

ALICE M. BATCHELDER, Circuit Judge.   Appellant Henry Garcia appeals his sentence from the district court's order denying him a reduction for acceptance of responsibility.   Appellant also claims that the district court improperly increased his sentence by making findings of fact regarding the amount of drugs transported in violation of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).   Because we hold that the district court did not clearly err in denying Garcia credit for acceptance of responsibility and that *Apprendi* does not affect the sentencing in this case, we affirm the order of the district court.

### I.  Background

On February 8, 1998, Appellant Henry Garcia was charged with knowingly and intentionally conspiring to possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841 (a) (1) and 846.  Garcia was arraigned on April 16, 1998, and stood mute.   The court entered a plea of not guilty.   On January 14, 1999, Garcia changed his plea to guilty, pursuant to a Rule 11 Plea Agreement.  The Court sentenced him to 135 months imprisonment on September 30, 1999.

During the course of a DEA investigation of a drug ring distributing marijuana between Texas and Michigan, a confidential informant provided information to DEA Special Agent Cary Freeman regarding Garcia's involvement in the ring.  The investigators learned that Garcia had been hired by Ronald Carboni, a co-conspirator and owner of a used car dealership, to transport cars to locations throughout the country.   Carboni and Garcia hid marijuana, wrapped in greased packages to frustrate detection efforts, in some of the cars to be transported.  The cars were then loaded onto a car hauler, which transported them to the intended destination. Garcia would meet the car hauler there, pay the driver, and see that the cars got to their intended buyers.  The marijuana

---

than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment . . .”), the district court's failure to notice any defect cannot be charged as plain error.   Garcia pled guilty to the indictment's charge of conspiracy to possess with intent to distribute marijuana; he explicitly admitted trafficking in an amount sufficient to place him within the limits of 21 U.S.C. § 841(b)(1)(B), and he was sentenced within the limits of that section.  Clearly, Garcia's conviction and sentence pursuant to that indictment and plea did not affect his substantial rights.   *See United States v. Olano*, 507 U.S. 725 (1993).

### V.  Conclusion

For the foregoing reasons, the judgment of conviction and sentence is AFFIRMED.

admits all of the facts that comprise the elements of the crime. If we are to apply *Apprendi* in the context of a guilty plea, we must view the statutory scheme authorized by the section or sections of the criminal law to which the defendant has pled guilty, as the analog to the jury's verdict. In this case, that section, at minimum, would be 21 U.S.C. § 841(b)(1)(B), which encompasses the quantity of marijuana to which Garcia expressly admitted in his statements to the DEA. Garcia's plea thus admits that he conspired to possess with intent to distribute the quantity of marijuana whose maximum statutory penalty is 40 years in prison. And although the sentence imposed in this case did not exceed the statutory maximum penalty for the quantity of marijuana to which Garcia pled guilty, his admission of this quantity satisfies even the "beyond a reasonable doubt" standard.

## IV.  Other Issues

Garcia also raises a number of other issues pro se regarding his conviction. These claims were not raised before the district court, and we review them for plain error. All are without merit. First, Garcia argues that in order to be convicted under § 841, the government must prove mens rea as to the type and quantity of the drugs. Garcia is mistaken on this point of law. The statute merely requires that the defendant "knowingly or intentionally . . . possess with intent to manufacture, distribute or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). Garcia pled guilty to all the material elements of this offense.

Garcia also argues that the grand jury indictment must contain the details regarding the amount of "cocaine [sic] amounts to charge of the type and quantity of the controlled substance involved is somehow sufficient to address the Defendant's Fifth Amendment . . . rights." To the extent that we understand this claim, we find it without merit. Even if we were to find that the indictment is defective, *see Jones v. United States*, 526 U.S. 227, 243, n. 6 (1999) ("under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other

deliveries were cloaked as legitimate transactions between car dealerships and car buyers. A person wishing to purchase marijuana in bulk from Carboni would purchase one of his used cars at a mark-up; the hidden marijuana was included in the price of the car. After the delivery of the cars was completed, Garcia would fly back to Houston, and the recipients of the cars would remove and distribute the marijuana. Using this scheme, Garcia and Carboni transported large amounts of marijuana from Houston, Texas, to Michigan, North Carolina, Florida, Minnesota and Alabama.

The presentence report, based largely on admissions Garcia made to the DEA after he was indicted and before he entered his guilty plea, calculated the quantity of marijuana attributable to Garcia as approximately 1,380 pounds (625 kg.). However, in a statement Garcia typed up after he had entered his guilty plea, he admitted to more drug delivery trips, but estimated the amount transported to be significantly less than 1,380 pounds. The probation department recommended that, consistent with his statements, Garcia be held responsible for the 625 kg. quantity. Under the Sentencing Guidelines, 400 to 700 kg. of marijuana results in a base offense level of 28; 21 U.S.C. § 841(b)(1)(B) provides that the maximum penalty for trafficking in that amount of marijuana is 40 year in prison.

The government objected to the presentence report's calculation of quantity, and submitted a summary of an interview with Carboni in which Carboni claimed that the amount of marijuana transported was at least 1,000 kilograms, which corresponds to a base sentencing level of 32 under the Guidelines. This amount was consistent with the quantities alleged by the government in the worksheets attached to the plea agreement that Garcia had executed. Garcia filed a response to the government's objections, specifically agreeing to the quantity recommended in the presentence report. The district court held an evidentiary hearing to determine the appropriate quantity of marijuana for sentencing purposes.

At the hearing, Carboni testified that Garcia had been involved in at least ten intrastate shipments of marijuana in Texas in 1995, and that Garcia moved about 3,200 pounds of marijuana in 1996, and an additional 2,300 pounds of marijuana in subsequent years. Carboni estimated that Garcia had participated in transporting approximately 4,500 pounds (roughly 2,040 kg.)[1] of marijuana.

Garcia also testified at the evidentiary hearing; he claimed that he was involved in only nine trips, that all but one of those trips were in 1995, the last one was at the beginning of 1996, and that the amounts carried on each trip were less than 200 pounds (90 kg.). He denied many of Carboni's claims regarding transporting large bulk amounts of marijuana, and only reluctantly admitted to picking up the proceeds from marijuana sales. He also denied making certain statements to the DEA regarding the extent of his involvement with the conspiracy to distribute marijuana.

Following the hearing, Judge Cleland issued findings of fact, in which he credited Carboni's version of the amounts shipped, and concluded that Garcia had been involved in the shipment of 2,499 kilograms of marijuana. The court also found that Garcia's equivocation regarding the amounts he carried disqualified him from receiving an "acceptance of responsibility" adjustment under USSG § 3E1.1(a). At least 1,000 but less than 3,000 kg. of marijuana requires a base offense level of 32 under the Sentencing Guidelines; under 21 U.S.C. § 841(b)(1)(A), the maximum penalty for more than 1,000 kg. is life in prison. The court sentenced Garcia using the base offense level of 32, and a criminal history category of II. The resulting sentence was 135 months, which occupies the bottom rung of the applicable range.

---

[1] The witnesses discuss the quantities of drugs shipped in both pounds and kilograms. The measurement material to sentencing is kilograms. Pounds can be converted into kilograms by dividing by 2.2046.

months, or 11 years and 3 months. While that base offense level was for a quantity in excess of that to which Garcia had explicitly admitted, the sentence imposed did not exceed 40 years in prison, the statutory maximum penalty for the quantity that Garcia explicitly admitted.[3] *Apprendi* does not purport to apply to penalties in excess of any particular range or based on any particular offense level under the Sentencing Guidelines. *See Apprendi*, 120 S. Ct. at 2353. Since the statute, § 841(b)(1)(B), authorized the court to impose a maximum sentence of 40 years for the quantity of marijuana to which Garcia expressly admitted, the rule of *Apprendi* is not offended by a sentence of 135 months.

The sentence finally imposed by the district court does not offend this court's holding in *United States v. Ramirez*, 242 F.3d 348 (6th Cir. 2001). Although the district court's findings here brought the defendant within the sentencing range of § 841(b)(1)(A) (specifying 10 years to life), which is a higher range than he explicitly admitted to at his allocution, *see* § 841(b)(1)(B)(specifying 5-40 years), the sentence imposed here was not at the bottom of the higher statutory range, as it was in *Ramirez*. Thus nothing indicates that the district court thought itself constrained by a specific statute to impose the sentence it did. The final sentence – imposed pursuant to the Guidelines and supported by findings of fact appropriately found by a preponderance of the evidence – offends neither *Apprendi* or *Ramirez*.

Finally, it is important to note that when applied to a guilty plea, the Supreme Court's holding in *Apprendi* does not make explicit sense. The Court specifically limited its holding to cases in which "a non-jury factual determination increases the maximum sentence beyond the statutory range authorized by the jury's verdict." A guilty plea, of course, eliminates any jury verdict, and hence, any statutory range authorized by the jury's verdict. By entering a plea of guilty, a defendant

---

[3] Forty years incarceration is the maximum penalty authorized by § 841(b)(1)(B).

possessing with the intent to distribute a controlled substance prohibited by 21 U.S.C. § 841(a)(1). He does not challenge the validity of this plea, and the record discloses no basis on which he could do so. The indictment did not allege a specific quantity of drugs; rather it charged Garcia with conspiracy to possess "various quantities" of marijuana. The plea agreement explicitly recited Garcia's agreement that "[t]he worksheets attached to this agreement represent the position of the government on the factors to be considered in calculating the appropriate sentencing range . . ." Those worksheets specified the government's position that Garcia was responsible for "1000 kg. or more marijuana." The agreement also explicitly stated that Garcia "acknowledged that the court will independently determine the applicable sentencing factors at sentencing." At the plea hearing, the district court carefully advised Garcia that the maximum sentence for trafficking in marijuana is life imprisonment,[2] and that "the government's calculations of drug quantities in your circumstance indicate that you are facing the possibility, at the worst, of life imprisonment under this guilty plea." Garcia said that he understood this fact. Further, the district court advised Garcia that he was free to try to persuade the court that he was not responsible for the quantity of drugs the government claimed in the worksheets, but that only the court would make the ultimate decision. Garcia indicated that he understood. Finally, before accepting Garcia's plea, the district court advised Garcia that if, having had all of the foregoing explained to him, he wanted to back out and persist in his plea of not guilty, he was free to do so. Garcia declined and entered a plea of guilty.

After the evidentiary hearing on the quantity of marijuana for which Garcia should be held responsible, the district court concluded that Garcia had participated in the transporting of 2,499 kg., an amount that placed him within the base offense level of 32. The district court imposed a sentence of 135

---

[2]Life imprisonment is the maximum sentence allowable under § 841(b)(1)(A).

Garcia has appealed through counsel the denial of the acceptance of responsibility and has raised pro se the validity of the sentence in light of the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000).

## II. Acceptance of Responsibility

We will not disturb a district court's factual findings as to whether a defendant has accepted responsibility for his criminal conduct unless those findings are clearly erroneous. *United States v. Wilson*, 197 F.3d 782, 785 (6th Cir. 1999) (*citing United States v. Bradshaw*, 102 F.3d 204, 214 (6th Cir. 1996)). A finding is clearly erroneous when the "reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

Reviewing the transcript, we find no clear error in the district court's decision to believe Carboni rather than Garcia. Carboni's story of massive marijuana deliveries was consistent throughout cross-examination. He explained at length why his version of the amounts shipped is credible and Garcia's is not, using specific quantities and prices to illustrate that, as a businessman, albeit an illegitimate one, he simply could not make a profit on the drug transactions unless he shipped bulk amounts of at least 500 pounds. When asked why Luis Garcia, another co-conspirator, might provide a different account of the amounts of marijuana transported, Carboni answered: "To keep his sentencing guidelines down which would be typical of all these guys to do." Carboni also suggested that Henry Garcia's memory of events might be unreliable, stating, "Henry really couldn't think out there because he was smoking large amounts of crack cocaine."

Garcia, in contrast, changed his story numerous times. His answers were frequently evasive. The trial judge summarized his reluctance to believe Garcia stating:

The phrase I used in my bench notes is this is like pulling teeth to get him to answer a question straight. It did. It

took two or three questions to persuade Mr. Garcia to admit that the purpose of that second trip to Florida was indeed related to marijuana. He said no it wasn't marijuana, it wasn't this. It was – as though to imply it was an innocent business trip or pleasure trip or something. But come to find out it was to pick up some money. What was the money for, Parker [the prosecutor] said. Garcia answered, well, I gave it to Luis, which of course doesn't answer the question. But what was the money for, she said. Well, it was for paying for marijuana. So the trip was related to marijuana, then wasn't it? Well, yes he says. Well, that is not the kind of profile one would expect in a forthcoming, sincere, credible witness . . . ." J.A. 230.

Given Garcia's equivocation on the stand and the differing accounts he supplied to the probation department, the district court did not clearly err in finding Carboni's internally consistent testimony more credible than Garcia's, and in refusing to give Garcia credit for acceptance of responsibility.

### III.  The *Apprendi* Issue

Next, we examine whether the district court sentenced Garcia inappropriately in light of the Supreme Court's recent decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000). In *Apprendi*, the U.S. Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty beyond the statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt." *Id.*, S. Ct at 2362-63. *Apprendi* involved the application of a New Jersey hate-crime statute that permitted a judge to enhance a sentence if he found by a preponderance of the evidence that the crime in question had been racially motivated. Apprendi had fired a weapon at the home of an African-American family that had recently moved into his neighborhood. He was arrested and pled guilty to two counts of second-degree possession of a firearm for an unlawful purpose and one count of unlawful possession of an antipersonnel bomb. On their own, these violations would

have subjected Apprendi to a maximum of 10 years in prison. At sentencing, the court determined that Apprendi's crimes had been racially motivated, and applied a sentence enhancement for race-based crimes. When the sentencing factor was added, Apprendi faced 20 years in prison, significantly more time than the unenhanced maximum penalty for the offenses to which he had pled. The Supreme Court found the New Jersey statute unconstitutional under the Due Process Clause, but limited its holding to cases where a "non-jury factual determination increases the maximum sentence beyond the statutory range authorized by the jury's verdict." *Id.*, 120 S. Ct., at 2362-63.

This circuit has applied *Apprendi* to drug cases, requiring that factual determinations which increase the maximum sentence for the crime charged in the indictment must be made "beyond a reasonable doubt." *See United States v. Rebman*, 226 F.3d 521, 524 (6th Cir. 2000) (holding that Rule 11 agreement did not waive right to have court decide beyond a reasonable doubt issue of whether death resulted from drug distribution); *see also, United States v. Page*, 232 F.3d 536, 543 (6th Cir. 2000) (sentence vacated for plain error when amount subjecting defendant to higher maximum penalty was not determined beyond reasonable doubt). The *Rebman* court set forth the responsibility of an appellate court reviewing imposition of "enhancements" post- *Apprendi* saying, "[o]ur duty . . . is to examine whether the sentencing factor in this case was a factual determination, and whether that determination increased the maximum penalty for the crime charged in the indictment." *Rebman*, 226 F.3d at 524.

*Apprendi* explicitly applies only in those situations where a factual determination made under a lesser standard of proof than the reasonable doubt standard "increases the penalty for a crime beyond the statutory maximum." *Apprendi*, 120 S. Ct. at 2362-63. As we shall explain, this case does not present an *Apprendi* problem.

Garcia knowingly and voluntarily pled guilty to a violation of 21 U.S.C. § 846, conspiracy to commit the offense of