**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James Darrell SHOCKLEY,**
**Defendant–Appellant.**

**No. 00–6078.**

United States Court of Appeals,
Sixth Circuit.

Oct. 2, 2001.

Before KEITH, BATCHELDER, and MOORE, Circuit Judges.

## OPINION

MOORE, Circuit Judge.

On June 28, 2000, the district court revoked Defendant–Appellant James Darrell Shockley's ("Shockley") term of supervised release, which had been imposed on March 12, 1993, as part of Shockley's original sentence for possession of marijuana with the intent to distribute. In so doing, the district court sentenced Shockley to two years' imprisonment, followed by a new three-year term of supervised release.

Shockley now appeals this sentence and judgment. For the reasons that follow, we **AFFIRM** the district court's judgment.

## I. BACKGROUND

On March 12, 1993, the district court sentenced Shockley pursuant to his guilty plea to one count of possessing more than 100 but less than 400 marijuana plants with the intent to distribute. Shockley received a term of forty-six months' imprisonment,[1] followed by five years of supervised release, as his sentence. On December 1, 1995, the district court issued an

---

**1.** Under 21 U.S.C. § 841(b)(1)(B), Shockley was subject to a mandatory minimum sentence of five years/sixty months. 21 U.S.C.A. § 841(b)(1)(B) (1993). Pursuant to 18 U.S.C. § 3553(e), however, the Government moved for a downward departure to forty-six months' imprisonment. At the time of Shockley's conviction, § 3553(e) provided:

Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as

[a] minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

See 18 U.S.C.A. § 3553(e) (1993).

order amending Shockley's sentence pursuant to Amendment No. 516 to the United States Sentencing Guidelines Manual (1995), which reduced the equivalency ratio of one marijuana plant from 1,000 grams to 100 grams. In its order, the district court reduced Shockley's March 12, 1993 sentence to twenty-four months' imprisonment. Because Shockley had served nearly thirty-two months of his original forty-six month sentence, the district court released Shockley from prison on December 5, 1995, noting that "[t]his represents a sentence of time served." Joint Appendix ("J.A.") at 10.

Thereafter, Shockley began his term of supervised release, which was scheduled to expire on December 4, 2000. On June 19, 2000, Probation Officer Sladjauna Pope filed a petition for warrant or summons for Shockley, alleging that Shockley had violated seven conditions of his supervised release. According to the probation officer, Shockley had violated a general condition not to commit another crime during his term of supervised release by being convicted of driving under the influence on July 26, 1999; arrested for vandalism on December 2, 1999 (which charge was later dismissed); arrested for driving on a revoked license, driving under the influence, and violating a seat belt law on February 4, 2000; charged for the theft of over $500 on April 6, 2000; and indicted on three counts of vandalism and three counts of arson on May 2, 2000. The probation officer also noted that Shockley had violated a general condition not to possess a firearm on March 15, 2000; a standard condition to make all required reports to his probation officer by not listing his arrests on his monthly reports for December 1999 and February 2000; a standard condition to refrain from the excessive use of alcohol as shown by Shockley's charges for driving under the influence; a standard condition to notify his probation officer within seventy-two hours of his being arrested or questioned by law enforcement; a special condition to participate in a program of testing and treatment for substance abuse when he failed to report for scheduled treatment on April 20 and 27, 2000, and upon his release from jail; and a special condition to perform community service due to physical limitations caused by a drunk-driving accident. The probation officer then listed the range of imprisonment that the policy statements in Chapter 7 of the United States Sentencing Guidelines recommended for Shockley, which was four to ten months.

On June 26, 2000, the district court held a revocation hearing to determine whether Shockley's supervised release should be revoked. After hearing from the attorneys and from Shockley, who admitted to most of the alleged violations of his supervised release, the district court stated the following:

> THE COURT: I find that you and whoever was with you jointly possessed a firearm in violation of the law. You were a convicted felon with a firearm. You had possession of that weapon. You and she had been shooting it, according to the testimony here. Therefore, you had possession, she had possession too at one time or another during the night.... You knew that you had been shooting the gun. You told the officer you had been shooting, we had been shooting....
>
> You are also guilty of a Class B violation, failure to communicate to an officer.
>
> You haven't reported, as you are supposed to, about your difficulties with the law. You have just been kind of out of control. You have hurt yourself and you

are going to hurt somebody, if you don't get yourself under control.

I will put you in prison for two years. Supervised release of three years after that and violation of terms of your supervised release.

I told you, like I tell everybody else, if I catch you with illegal drugs or a firearm, I will send you back to prison.... You have to straighten up. You have got to quit drinking to save your life. If you don't, you are a dead duck. You better do something about it.

J.A. at 80–81. The district court then agreed to recommend Shockley for the Comprehensive Drug and Alcohol Treatment Program and continued to tell Shockley:

> THE COURT: When you get out don't you go out here and get drunk again and get a gun, because if you do, you will be in trouble again. That is why we have this law, to keep people like you from getting guns and hurting people.
>
> MR. SHOCKLEY: I didn't hurt no one. I didn't know the gun was in there.
>
> THE COURT: You had been shooting it. You knew it was in there. What kind of talk is that? You tell [t]his officer you had been shooting out there, well, yeah, we was shooting at a bottle. You didn't know the gun was in there. Mr. Shockley, you are being lo[o]se with the truth there now, you know.
>
> *      *      *
>
> If he doesn't use drugs, he hasn't got anything to worry about. I got to keep him out of trouble some way.

J.A. at 84–85.

Thereafter, the district court issued a written order revoking Shockley's super-

vised release. In this order, the district court noted that, with the exception of the alleged violation of possessing a firearm on March 15, 2000, Shockley had admitted, in whole or in part, to all of the violations alleged in the probation officer's petition. Then, based upon the testimony of Officer Cannon who had testified that Shockley admitted to shooting the firearm in question on March 15, 2000, the district court concluded that the Government had proved "by a preponderance of the evidence that [Shockley] was in joint possession of a firearm and ammunition with the female passenger" on March 15, 2000, in violation of his supervised release. J.A. at 38–39. The district court then explained that, although the policy statements of the Sentencing Guidelines provided for an imprisonment range of only four to ten months, it would sentence Shockley to twenty-four months' imprisonment because of his "repetitious and egregious behavior." J.A. at 39. The district court also sentenced Shockley to three years of supervised release.

## II. ANALYSIS

### A. Consideration of Statutory Sentencing Factors

Shockley argues that the district court abused its discretion in sentencing him upon the revocation of his supervised release. Specifically, Shockley contends that the district court abused its discretion when it failed to detail and explain its consideration of required sentencing factors under 18 U.S.C. § 3553. Shockley also contends that the district court gave him a plainly unreasonable sentence when it sentenced him to two years' imprisonment, followed by three years of supervised release,[2] and failed to give him "cred-

---

2. Shockley does not contend that the district court lacked the authority to sentence him to

it" for the 233 days he served in excess of his amended December 1, 1995 sentence.[3] We review a district court's sentence upon revocation of a defendant's supervised release for an abuse of discretion. *United States v. Washington*, 147 F.3d 490, 491 (6th Cir.), *cert. denied*, 525 U.S. 954, 119 S.Ct. 386, 142 L.Ed.2d 319 (1998); *United States v. Webb*, 30 F.3d 687, 688 (6th Cir. 1994).

■ We conclude that the district court did not abuse its discretion in sentencing Shockley upon the revocation of his supervised release. At the time of Shockley's original conviction, the district court had the authority, under 18 U.S.C. § 3583(e)(3), to revoke Shockley's supervised release and to resentence him, so long as it considered the factors identified in § 3553. 18 U.S.C.A. §§ 3553(a), 3583(e)(3) (1993).[4] The district court also had the authority to reimpose a new term

of supervised release under § 3583(e)(3).[5] *Johnson v. United States*, 529 U.S. 694, 704–09, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000); *see also* 18 U.S.C.A. § 3583(e)(3) (1993). In sentencing Shockley upon the revocation of his supervised release, the district court was not required to recite any "magic words" explaining whether and how it considered the policy statements contained in the Guidelines, or how it weighed the factors set out in § 3553. *See United States v. McClellan*, 164 F.3d 308, 310 (6th Cir.1999). All that was required was "an indication of [the district court's] reasons for imposing a sentence that exceeded the recommended sentencing range." *Id.*

In this case, the district court easily met this standard. Although the district court did not specifically explain during Shockley's revocation hearing and in its order exactly how it considered each of the fac-

---

two years of imprisonment, followed by three years of supervised release; he argues only that such sentence is plainly unreasonable. In his brief, Shockley explained, "Because the three-year term of supervised release imposed upon revocation did not exceed the balance of the original term of supervised release, five years, after revocation and the imposition of a 24–month term of incarceration, Mr. Shockley raises no issue relative to the term of supervised release imposed. However, he notes within the argument section how the fact that the district court imposed the maximum allowable term of supervised release also reflects the unreasonableness of the sentence imposed." Shockley Br. at 9 n. 1.

3. In its brief, the Government does not contest Shockley's count of the days he served in excess of his original sentence.

4. These factors include (1) the nature of Shockley's offenses; (2) the need to deter criminal conduct, to protect the public, and to provide defendant with appropriate treatment; (3) Shockley's Guideline range for sentencing; (4) Guideline policy statements; and (5) the avoidance of unwarranted disparities. 18 U.S.C.A. § 3553(a) (1993).

5. In this case, because Shockley's original conviction and sentence were based upon a Class B felony, possession of marijuana with the intent to distribute, the district court had the authority to resentence Shockley to a maximum of three years' imprisonment upon the revocation of his supervised release. *See* 18 U.S.C.A. § 3583(e)(3) (1993). Shockley contends that *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), casts doubt on his original conviction and sentence for possession of marijuana with the intent to distribute because his indictment failed to allege a quantity of drugs. We reject this argument in light of our recent precedent in *United States v. Garcia*, 252 F.3d 838 (6th Cir.2001), where we held that *Apprendi* was not implicated, even though the defendant's indictment alleged no specific drug quantity because, like Shockley, the defendant had admitted to a drug quantity in the factual worksheets attached to his plea agreement and the defendant's sentence "did not exceed … the statutory maximum penalty for the quantity that [the defendant] explicitly admitted." *Garcia*, 252 F.3d at 843.

tors under § 3553, the district court provided reasons for its sentence that exhibit a clear consideration of these factors, which include (1) the nature of Shockley's offenses; (2) the need to deter criminal conduct, to protect the public, and to provide defendant with appropriate treatment; (3) Shockley's Guideline range for sentencing; (4) Guideline policy statements; and (5) the avoidance of unwarranted disparities. For example, the district court revealed its consideration of the nature of Shockley's offenses when it identified all of the offenses committed by Shockley in its order. *See* J.A. at 37–39. It also displayed its consideration of the need to deter Shockley from committing further criminal conduct when it warned Shockley "I told you … if I catch you with illegal drugs or a firearm, I will send you back to prison…. You have to straighten up." J.A. at 81. Additionally, the district court revealed its consideration of the need to protect the public from Shockley when it cautioned, "[y]ou have hurt yourself and you are going to hurt somebody, if you don't get yourself under control," *see* J.A. at 81, and explained to Shockley, "[t]hat is why we have this law, to keep people like you from getting guns and hurting people," *see* J.A. at 84. The district court also displayed its concern for the need to provide Shockley with appropriate treatment when it accepted Shockley's request for alcohol treatment, *see* J.A. at 81–82; and advised Shockley, "[y]ou have got to quit drinking to save your life. If you don't, you are a dead duck. You better do something about it." J.A. at 81. Finally, we can infer that the district court considered Shockley's applicable sentencing range and the relevant Guideline policy statements because both

the prosecutor and the probation officer informed the district court of the applicable sentencing range and pertinent policy statements. J.A. at 33, 67–68. In sum, the record shows that the district court properly considered the factors identified in § 3553 when it sentenced Shockley upon the revocation of his supervised release.

The fact that the district court imposed a sentence greater than that recommended by the policy statements in the Sentencing Guidelines does not constitute an abuse of discretion. The "policy statements [in the Guidelines] are merely advisory and do not bind the district court." *Washington,* 147 F.3d at 491. Likewise, the fact that the district court did not give Shockley "credit" for the 233 days he served in excess of his amended December 1, 1995 sentence does not make his sentence upon revocation plainly unreasonable. Although Shockley's counsel informed the district court that Shockley served 233 days over his amended sentence, the district court was free to disregard that fact in sentencing Shockley upon the revocation of his supervised release. As we noted in *United States v. Jackson,* 70 F.3d 874 (6th Cir.1995), "[w]e will affirm a district court's sentence of imprisonment upon … revocation of supervised release provided that the district court considered the applicable policy statements, the sentence is within the range prescribed by statute, and the sentence is not plainly unreasonable." *Id.* at 878 (footnote omitted). In this case, because the district court properly considered the factors under § 3553 before revoking Shockley's term of supervised release and did not sentence Shockley above the maximum sentence allowed upon revocation,[6] we conclude that the dis-

---

6. In its order revoking Shockley's supervised release, the district court asserted that it would sentence Shockley to the "highest end of the applicable range, *i.e.,* up to and includ-

ing 24 months." J.A. at 39. However, as both parties explained at oral argument before this court, 24 months was not the highest end of the applicable range. In this case, the

trict court did not abuse its discretion in sentencing Shockley after it revoked his supervised release and that Shockley's sentence was not plainly unreasonable.

## B. Sentencing Credit

■ Shockley also argues that the district court erred in not granting him sentencing credit for the 233 days he served in excess of his amended December 1, 1995 sentence. In the alternative, Shockley argues that the district court erred when it amended his sentence on December 1, 1995, by referring to his amended sentence as "time served" instead of noting that he had actually served 233 days in excess of such sentence.

We reject both of these arguments. First, it is the Attorney General through the Bureau of Prisons, and not the district court, that is authorized to grant a defendant credit for time served prior to sentencing under 18 U.S.C. § 3585. *See*

*United States v. Wilson,* 503 U.S. 329, 335, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992); *McClain v. Bureau of Prisons,* 9 F.3d 503, 505 (6th Cir.1993). As Shockley has not shown that he has pursued his administrative remedies with the Bureau of Prisons as required, the district court had no authority to grant Shockley his requested sentencing credit, and we have no authority to review Shockley's claim for such credit.[7] *See United States v. Westmoreland,* 974 F.2d 736, 737–38 (6th Cir.1992), *cert. denied,* 507 U.S. 1019, 113 S.Ct. 1818, 123 L.Ed.2d 448 (1993).

Furthermore, we will not order the district court to change its December 1, 1995 order, which noted that "this represents a sentence of time served." The district court specifically stated that Shockley's sentence was reduced to twenty-four months in its order. Therefore, we read the district court's order as stating only that Shockley had already served his twenty-four month sentence.[8]

---

highest end of the applicable sentencing range for Shockley was 36 months. 18 U.S.C.A. § 3583(e)(3) (1993) (A court may "revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release without credit for time previously served on post–release supervision, if it finds by a preponderance of the evidence that the person violated a condition of supervised release ... except that a person whose term is revoked under this paragraph may not be required to serve *more than 3 years in prison if the offense for which the person was convicted was a Class B felony."*) (emphasis added).

7. A prisoner may seek judicial review of the computation of this credit under 28 U.S.C. § 2241, but only after a prisoner has sought administrative review and has exhausted all of his administrative remedies. *See Wilson,* 503 U.S. at 335.

8. At oral argument, the Government pointed out that the district court had actually erred when it reduced Shockley's forty-six month sentence to twenty-four months on December 1, 1995. When Shockley was originally sentenced on March 12, 1993, Shockley had already admitted to the possession of more than 100 but less than 400 marijuana plants and, as a result, was subject to a mandatory minimum sentence of sixty months' imprisonment under 21 U.S.C. § 841(b)(1)(B)(vii), which required a defendant in possession of "100 or more marijuana plants *regardless of weight"* to "be sentenced to a term of imprisonment *which may not be less than 5 years."* 21 U.S.C.A. § 841(b)(1)(B)(vii) (1993) (emphasis added). The only reason that Shockley received a sentence of imprisonment for forty-six months, as opposed to sixty months, on March 12, 1993 was because the Government moved for downward departure pursuant to § 3553(e). Thus, on December 1, 1995, the district court could not have used Amendment No. 516 to reduce Shockley's sentence further to twenty-four months without concluding that Shockley satisfied the criteria in 18 U.S.C. § 3553(f), the safety-valve provision which allows a district court to sentence a defendant without regard to any statutory minimum sentence, if the court finds at sentencing, that the defendant satisfies certain criteria. *United States v. Pratt,* 87 F.3d 811,

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.

813 (6th Cir.1996) (noting that safety-valve provision was enacted as a means of allowing "less culpable defendants in drug-related crimes who fully assist the government to avoid the application of the mandatory minimum sentence"); *see also United States v. Clark,* 110 F.3d 15, 18 (6th Cir.1997) (holding that " § 3553(a) authorizes [retroactive] consideration of the safety valve statute when a defendant is otherwise properly resentenced under § 3582(c)(2)," which provides that a court may modify a sentence when the Sentencing Commission has subsequently lowered the sentencing range).

The Government waived this argument, however, by not raising it at the time the district court issued its amended December 1, 1995 order. *See United States v. Ukomadu,* 236 F.3d 333, 340 (6th Cir.2001) ("A defendant waives the right to appeal an application of the Sentencing Guidelines when he fails to object in the trial court."); *United States v. Nagi,* 947 F.2d 211, 213–14 (6th Cir.1991), *cert. denied,* 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992). The district court's December 1, 1995 order remains in effect.