RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0085P (6th Cir.)
File Name: 03a0085p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

  *v.*        No. 01-6409

JULIO VILLARCE,
   *Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 00-00089—Aleta A. Trauger, District Judge.

Argued: March 11, 2003

Decided and Filed: March 21, 2003

Before: NELSON, COLE, and GILMAN, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Sumter L. Camp, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Van S. Vincent, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** Sumter L. Camp, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Van S. Vincent, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

1

---

**OPINION**

---

DAVID A. NELSON, Circuit Judge. The central issue in this appeal is whether a defendant may be convicted of conspiracy to distribute at least 100 kilograms of marijuana, and of possession of at least 100 kilograms of the drug with intent to distribute it, notwithstanding the alleged absence of evidence that he specifically agreed to distribute such a substantial quantity and specifically intended to distribute that amount. A binding decision of this court – which accords with the decisions of at least six other circuit courts of appeals – compels the conclusion that conviction is permissible under these circumstances.

I

The defendant, Julio Villarce, was indicted on charges of conspiracy to distribute at least 100 kilograms of marijuana, in violation of 21 U.S.C. § 846, and possession of at least 100 kilograms of marijuana with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1). He was tried before a jury. The key witness at Villarce's trial was a coconspirator, Jose Reyna, who testified that he had come to Nashville "to do some deals with Mr. Villarce and other people, dealing with marijuana."

As he explained at trial, Mr. Reyna arranged for the transportation of a load of marijuana from San Antonio to Nashville. While in San Antonio, Reyna telephoned Mr. Villarce to see "if he would be able to work with us" and to "let him know that I was on the way." (Rather than speaking of marijuana by name over the telephone, Reyna and Villarce spoke of "painting some apartments." Reyna acknowledged at trial that "apartment" was a "code word.") Reyna had been instructed to call Villarce by the suppliers of the marijuana, David Vernaw and a man referred to only as "Mario."

---

There was sufficient evidence that Mr. Villarce's offenses involved at least 100 kilograms of marijuana.[2] That evidence, in conjunction with the evidence that Villarce agreed and intended to distribute a controlled substance, is enough to support Villarce's convictions under § 846 and § 841.

**AFFIRMED.**

---

[2]We think that the jury could reasonably find that the plastic wrap in which the marijuana was packaged weighed less than nine kilograms (roughly 20 pounds).

Under our decision in *United States v. Garcia*, 252 F.3d 838, 844 (6th Cir. 2001), moreover, the convictions would have to stand in any event. We held in *Garcia* that the government need not "prove mens rea as to the type and quantity of the drugs" in order to establish a violation of § 841.[1] As the *Garcia* opinion explained, drug type and quantity are irrelevant to the mens rea element of § 841(a), which requires nothing more specific than an intent to distribute a controlled substance. See *id.* (citing 21 U.S.C. § 841(a)(1)). Intent is likewise irrelevant to the penalty provisions of § 841(b), which require only that the specified drug types and quantities be "involv[ed]" in an offense. 21 U.S.C. § 841(b)(1); see *United States v. Collazo-Aponte*, 281 F.3d 320, 326 (1st Cir.), *cert. denied*, 123 S. Ct. 275 (2002); *United States v. Sheppard*, 219 F.3d 766, 768 n.2 (8th Cir. 2000), *cert. denied*, 531 U.S. 1200 (2001).

Mr. Villarce protests that under *Jones v. United States*, 526 U.S. 227 (1999), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), drug quantity is an element of the offense if, as in this case, its effect is to increase the maximum penalty. He suggests that mens rea must be proved as to every element of the offense. But *Garcia* teaches that the drug quantity element of the offense is entirely independent of the mens rea requirement. *Garcia*, 252 F.3d at 844. At least six of our sister circuits have agreed that *Apprendi* does not require proof of knowledge or intent with respect to drug type and quantity. See *United States v. Gamez-Gonzalez*, 319 F.3d 695, 699-700 (5th Cir. 2003); *United States v. Carranza*, 289 F.3d 634, 644 (9th Cir.), *cert. denied*, 123 S. Ct. 572 (2002); *Collazo-Aponte*, 281 F.3d at 326; *United States v. Barbosa*, 271 F.3d 438, 457-59 (3d Cir. 2001), *cert. denied*, 123 S. Ct. 660 (2002); *United States v. Carrera*, 259 F.3d 818, 830 (7th Cir. 2001); *Sheppard*, 219 F.3d at 768 n.2.

---

[1] Because § 846 criminalizes conspiracies to violate § 841, the holding of *Garcia* applies to violations of that statute as well.

Mr. Reyna took the marijuana to a certain Rick Kiralga, "who was supposed to make the trip [from San Antonio to Nashville] in a 18 wheeler or rent-a-car." Reyna and Kiralga agreed to meet at a Shoney's Inn in Nashville.

When the meeting occurred, Reyna told Kiralga that they were to take the marijuana to Villarce's house in accordance with the instructions of Vernaw and Mario. Villarce was to sell some of the marijuana and to hold the remainder for "other fellows" to "get rid of too." Reyna telephoned Villarce from the Shoney's Inn and "told him that I was on my way to his house." Again, the men did not use the word "marijuana" while on the telephone – "we don't say that word into the phone."

Reyna and Kiralga drove to Villarce's house, and Reyna went inside to tell Villarce that the "stuff was already there." The two men then came out and removed two bags of marijuana from the trunk of Kiralga's car. They were prevented from carrying the bags into the house by the appearance of law enforcement officers. It turned out that Kiralga had informed the FBI about the shipment of marijuana to Nashville, and the officers had monitored the delivery to Villarce's house.

Officers took possession of the two bags of marijuana that Reyna and Villarce had been carrying to the house, and they seized additional bags of marijuana from the trunk of the car. All of the marijuana was packaged into bundles with plastic wrap. The total weight of the bundles, including the plastic wrap, was approximately 109 kilograms. Villarce admitted to the officers that "he was aware that marijuana was going to be brought to his house," but he said that "he was surprised at the amount."

After hearing this evidence, together with evidence that electronic scales (typical of those used in dividing large quantities of drugs) were found in Villarce's house, the jury convicted Mr. Villarce on both counts of the indictment. The jury expressly found that each offense – conspiracy and possession with intent to distribute – involved at least 100

kilograms of marijuana. These findings subjected Villarce to a minimum sentence of 60 months' imprisonment, see 21 U.S.C. § 841(b)(1)(B), and 60 months was the sentence imposed by the district court.

## II

Mr. Villarce argues on appeal that the evidence was insufficient to support his convictions. When considering such an argument we must not "weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. M/G Transport Services, Inc.*, 173 F.3d 584, 588-89 (6th Cir. 1999). Where a motion for a judgment of acquittal has been denied, our task is to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony*, any rational trier of fact could find the elements of the crime beyond a reasonable doubt." *Id.* at 589 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under this standard, we believe, a rational jury could indeed find Mr. Villarce guilty of the charged offenses.

Mr. Villarce did not move for a judgment of acquittal on the charge of possession with intent to distribute. Accordingly, his conviction on that charge must be affirmed absent a "manifest miscarriage of justice." *United States v. Horry*, 49 F.3d 1178, 1179 (6th Cir. 1995). Justice manifestly miscarries only when "the record is devoid of evidence pointing to guilt." *United States v. Price*, 134 F.3d 340, 350 (6th Cir.), *cert. denied*, 525 U.S. 845 (1998). If the evidence against Villarce was sufficient to support a conviction under the standard of *Jackson v. Virginia,* it follows *à fortiori* that the evidence was sufficient under the "manifest miscarriage of justice" standard.

The evidence – Mr. Reyna's testimony, in particular – plainly supports a finding that Mr. Villarce conspired to distribute, and possessed with the intent to distribute, *some* quantity of marijuana. Reyna testified that he telephoned

Villarce at the request of Mario and Vernaw to see "if he would be able to work with us" and to let Villarce know that Reyna "was on the way." Although the conversation was couched in terms of painting apartments, the totality of Reyna's testimony – including his statement that he came to Nashville to "do some deals with Mr. Villarce . . . dealing with marijuana" and his acknowledgment that "apartment" was a "code word" – gave the jury ample reason to find that the conversation was in fact about a shipment of marijuana. Reyna testified further that he telephoned Villarce immediately before delivering the marijuana to Villarce's house; that he informed Villarce, upon arrival, that the "stuff" was there; and that he and Villarce together began to unload a vehicle that obviously contained a large quantity of "stuff." Villarce himself admitted that he knew Reyna was bringing marijuana to his house. And Reyna said that Villarce's role was to "hold [the marijuana] and sell some of it." This evidence surely permitted the jury to infer that Villarce intended to participate in the distribution of marijuana and agreed to do so.

The real thrust of Mr. Villarce's argument is that the government's proof was insufficient because there was no evidence that he agreed or intended to distribute at least 100 kilograms of marijuana, as opposed to some lesser quantity of the drug. In this connection Mr. Villarce cites his statement upon arrest that he was surprised by the amount of marijuana Mr. Reyna had brought to his house.

Surprised he may have been, but there is no evidence that he withdrew from the conspiracy on looking into the trunk of the vehicle and seeing how much marijuana was there. The factual predicate urged by Mr. Villarce – *i.e.*, that there was no evidence that he ever contemplated a quantity of marijuana as great as 100 kilograms – is thus highly questionable. It seems reasonable to infer that he contemplated a quantity that large when, after seeing with his own eyes what Reyna had been talking about, he elected to carry on with the plan.