UNITED STATES of America, Plaintiff–Appellee,

v.

Ishon HARDIN, Defendant–Appellant.

No. 01–6247.

United States Court of Appeals, Sixth Circuit.

Sept. 3, 2003.

372

David P. Folmar, Jr., Asst. U.S. Attorney, U.S. Attorney's Office, Knoxville, TN, for Plaintiff–Appellee.

Ishon D. Hardin, pro se, Memphis, TN, Robert A. Ratliff, Roberts, Shields & Green, Mobile, AL, for Defendant–Appellant.

Before BOGGS and GILMAN, Circuit Judges; and MARBLEY, District Judge.[*]

PER CURIAM.

After a jury trial, appellant Ishon Hardin was convicted of conspiracy to distribute a controlled substance and possession with intent to distribute a substance containing a detectable amount of cocaine hydrochloride. He was sentenced to 292 months of imprisonment. Hardin appeals this sentence on several grounds. For the following reasons, we affirm the sentence imposed by the district court.

Hardin was indicted for conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and possession with intent to distribute a substance containing a detectable amount of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). After several continuances, a detention hearing was held, and Hardin was arraigned. He pleaded not guilty to both counts. A jury found Hardin guilty on both counts, making a specific finding that he conspired to distribute and/or possess with the intent to distribute five kilograms or more of powder cocaine, and that he conspired to distribute and possess with the intent to distribute 50 grams or more of cocaine base.

[*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

At Hardin's sentencing hearing he objected to several recommendations made in the presentence report (PSR): the base offense level, the two-level upward adjustment for obstruction of justice, and the two-level upward adjustment for possession of a firearm during a drug trafficking offense. The district court found that the base offense level of 38, recommended in the PSR, was unsupported by the testimony regarding the amount of cocaine hydrochloride and cocaine base presented at trial. The court found that Hardin was only responsible for 1.123 kilograms of cocaine base and 5.561 kilograms of cocaine powder, and reduced his base offense level to 36. However, the court did impose the two two-level upward adjustments. Therefore, Hardin's base offense level was found to be 40, and his criminal history category to be I, resulting in a sentencing range of 292–365 months. Hardin was sentenced to 292 months of imprisonment on each count, to be served concurrently.

Hardin now appeals, asserting an *Apprendi* argument, challenging the base offense level found by the district court, and the two two-level upward adjustments imposed by the district court, for obstruction of justice and for possession of a firearm during a drug offense.

## I. Two-level upward adjustment for obstruction of justice

■ This court reviews sentencing enhancements applied pursuant to § 3C1.1 of the United States Sentencing Guidelines under the "clear error" standard. *United States v. Jackson–Randolph*, 282 F.3d 369, 389–90 (6th Cir.2002) (citing *Buford v. United States*, 532 U.S. 59, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001)). Section 3C1.1 of the sentencing guidelines instructs the district court:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. Application note 4 to the guideline states that one example of obstruction of justice is "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding...." U.S.S.G. § 3C1.1, comment. (n.4(d)).

While Hardin was incarcerated pending trial, he was housed with Terry Griffin and Jack Chesney (previous cocaine customers of his). Griffin and Chesney both testified at trial that Hardin made a series of telephone calls from the jail and testified that he described those conversations to them. Griffin testified that he overheard Hardin ask William Bost to retrieve one kilogram of cocaine from Hardin's house and move it before the police could locate it. He also testified that Hardin told him that Bost found the cocaine and sold it. Hardin later told Griffin that Bost had been caught by the police with one and one-half kilograms of cocaine. Chesney testified that Hardin told him that he was instructing an associate to move a kilogram of cocaine that he had hidden in a wall in his house.

Officer Chris Bell of the Knoxville Police Department became aware, through Griffin and Chesney, that Hardin was making incriminating telephone calls. He instructed jail personnel to place all of defendant's routinely recorded conversations on compact disc. Bell testified that he listened to these conversations later. He testified that he heard Hardin give detailed di-

rections to his girlfriend, Travice Bost, and to William Bost regarding where they could find money inside his house. Bell testified that he believed "money" to be a code word for cocaine. Fellow Task Force member Rick Calcagno also testified that he heard Hardin give instructions to Travice, William, and William's aunt, Claudia Bost, regarding how to find the hidden cocaine. Finally, Calcagno testified that he heard a conversation between Hardin and William Bost, and one between Hardin and Travice Bost, in which it was strongly implied that "money" was indeed a code word for cocaine.

The district court memorialized its post-sentencing findings of fact in a memorandum and order. It stated:

> [T]he court finds that there was credible evidence at trial that, while in jail on these federal charges, the defendant called William Bost and asked him to retrieve a kilo of cocaine from the wall of the defendant's apartment before the police found it. This telephone call was monitored by the jail. There were other witnesses at trial who testified that they knew about Bost picking up the cocaine. And, shortly after the phone call, officers seized a large quantity of cocaine from Bost. The court finds that this evidence is sufficient to warrant a two-level increase for obstruction of justice. U.S.S.G. § 3C1.1. This conduct occurred during the pendency of the prosecution of this case and was directly related to his relevant conduct. *See* U.S.S.G. § 3C1.1, App. Notes 1 and 4(d).

Hardin argues that no cocaine was ever recovered by the police from his residence. He asserts that the only substantive evidence available is that William Bost was in possession of 1.5 kilograms of cocaine when he was arrested, and that this does not prove that he ordered Bost to remove cocaine from his house. He notes that

Bost did not testify at trial. He argues that Bell testified that he heard Hardin tell Bost to remove "money" from the house, and not cocaine, and that his speculation that it was a code word for cocaine is groundless. He puts forth some alternative reasons for wanting Bost to remove money from his house: he may have wanted Bost to give it to his girlfriend, to hire an attorney for him, or merely to keep it safe for him while he was in jail.

The district court did not err by applying the two-level enhancement for obstruction of justice to Hardin's base offense level. Hardin's statements to Griffin and Chesney, and his recorded phone calls to Travice, Claudia, and William Bost provide more than enough evidence for a finding that Hardin obstructed justice. His argument that "money" did not mean "cocaine" is not persuasive. As the government notes, even if it were money rather than cocaine that Hardin needed removed from its hiding place, it is likely that the money would be evidence of a crime, and his instructions would still constitute obstruction of justice.

II. Two-level upward adjustment for possession of a weapon during a drug offense

■ This court reviews for clear error the district court's determination that a defendant possessed a weapon in connection with a drug offense. *United States v. Keszthelyi*, 308 F.3d 557, 578–79 (6th Cir. 2002). Section 2D1.1(b) states that a two-level enhancement must be applied "[i]f a dangerous weapon (including a firearm) was possessed." The commentary states that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n.3). The government bears the initial burden of showing that the defen-

dant possessed a firearm during the crime. *Keszthelyi*, 308 F.3d at 578.

Kenya Shell, a customer of Hardin's, testified that Hardin "sometimes" carried a gun, specifically a 9–mm pistol. He testified that he'd seen Hardin carry Glocks and other types of guns. He added that, to his knowledge, these guns were stolen or might have been bought from others, or perhaps purchased at gun shows. Chesney testified that he had seen Hardin with a 9–mm gun, and that Hardin had given guns to Chesney's brother in the past. He testified that Hardin had obtained the guns at gun shows. The witnesses saw Hardin with these guns during the time of the conspiracy for which he was convicted.

The district court stated in its memorandum and order:

[T]he court finds that the evidence at trial through several witness's [sic] testimony was that the defendant almost always had a firearm in his car or on his person when he was buying and selling drugs. Further, he was arrested in 1998 for possession of a firearm, and the offense occurred during the conspiracy charged in Count One of the Indictment. The jury found the defendant guilty of this count. Thus, the two-level enhancement for possession of a firearm was appropriate.

Hardin argues that the government failed to meet its burden of showing by a preponderance of the evidence that he possessed a firearm. He argues that the testimony presented was less than credible, that the witnesses could not identify a specific type or model of firearm that he allegedly carried, and that no firearms were found on his person or in his car or home when he was arrested. Finally, he argues that an actual weapon needs to be produced by the government in order to apply the adjustment.

The government may establish possession of a firearm by showing by a preponderance of the evidence "that (1) the defendant actually or constructively 'possessed' the weapon, and (2) such possession was during the commission of the offense." *United States v. Pruitt*, 156 F.3d 638, 649 (6th Cir.1998). "Constructive possession of an item is the 'ownership, or dominion or control' over the item itself, 'or dominion over the premises' where the item is located." *Ibid.* (quoting *United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir.1991)). If the offense committed is part of a conspiracy, it is sufficient if the government establishes "that a member of the conspiracy possessed the firearm and that the member's possession was reasonably foreseeable by other members in the conspiracy." *United States v. Owusu*, 199 F.3d 329, 347 (6th Cir.2000).

The district court heard sufficient evidence to support its finding that Hardin possessed a weapon during the commission of the conspiracy to distribute a controlled substance. Two witnesses testified that Hardin was in possession of a firearm, specifically a 9–mm handgun. The evidence heard by the district court established that Hardin actually possessed a firearm during the commission of his conspiracy offense. Hardin argues that the testimony was sparse and not credible. The district court is in a unique position to judge the credibility of witnesses. An appellate court, relying on a cold record, must defer to these credibility determinations. *United States v. Hill*, 195 F.3d 258, 264–65 (6th Cir.1999). The evidence was sufficient to meet the preponderance of the evidence standard. The burden then shifted to Hardin to show that "it [wa]s clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n.3). Hardin did not produce any argument or evidence on this point.

A district court's finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

We are not convinced that a mistake was committed when the district court found that Hardin possessed a firearm during his drug offense. As Hardin did not present any evidence tending to show that "it is clearly improbable that the weapon was connected with the offense," U.S.S.G. § 2D1.1, comment. (n.3), the district court did not err in applying the two-level upward adjustment for possession of a firearm during the commission of a drug offense.

## III. Drug quantities and *Apprendi* error

■ This court reviews the district court's determination of drug quantity for clear error. *United States v. Hough*, 276 F.3d 884, 891 (6th Cir.2002). The determination of drug quantity must be supported by a preponderance of the evidence, and the district court may rely on any competent evidence in the record. *Ibid.* "[T]he district court's findings must have some minimum indicium of reliability beyond mere allegation." *Ibid.* (citation and quotation marks omitted).

At the sentencing hearing, the district court initially discounted the testimony of one of the government's witnesses, and omitted the drug quantities to which that witness testified. The court went on to list the witnesses against Hardin and the quantities to which they testified: (1) "Mr. Shell testified that he dealt with the defendant and that he got as much as one kilo of powder cocaine and as much as two ounces of crack." (2) "Mr. Yelder testified at least two kilos of powder." (3) "Mr. Anderson testified to 567 grams of crack and 56.7 grams of powder." (4) "Mr. Griffin testified to 425 grams of powder cocaine and half a kilo of crack." (5) "Mr. Chesney testified to one kilo of powder cocaine." The court then cited statements that Hardin made to Officer Ribolla, an arresting officer. Hardin told Ribolla that on a good week he would make three to four thousand dollars selling cocaine. In a bad week he would make fifteen hundred dollars. The court noted that when Hardin was arrested, he had 80.9 grams of powder cocaine on him. And finally, the court held him responsible for the one kilogram of cocaine that was removed from the wall of Hardin's house by William Bost.

The district court concluded that Hardin was responsible for 1.123 kilograms of crack cocaine, and 5.561 kilograms of powder cocaine.

Hardin argues that the court must err on the side of caution when calculating drug quantities, citing *United States v. Lawrence*, 915 F.2d 402, 409 (8th Cir.1990). He urges that the facts set forth by the government must have a sufficient indicium of reliability in order to be used for sentencing. He argues that the court erred when it attributed to him the one kilogram of cocaine removed from his house as there was no reliable evidence that the cocaine was ever there. He asserts that the witnesses upon which the district court relied were unreliable and were merely interested in cutting deals with the government.

The witnesses who testified at trial were all subject to cross-examination. Hardin's counsel was free to highlight any bias or interest these witnesses might have had. The district court judge was present during their testimony, and we should not question his credibility determinations on a cold record. *Hill*, 195 F.3d at 264–65. A quick calculation indicates that the district court did not add any extra drug quantity to its calculation based on Hardin's state-

ments to Officer Ribolla about his drug earnings. The district court erred on the side of caution, and did not commit clear error when it calculated the drug quantities for which Hardin was responsible.

▉ Hardin also argues that the only drug quantity properly attributed to him is the 80.9 grams of powder cocaine that he possessed when he was arrested. He argues that this calls for a sentencing range of 21 to 27 months. He argues that because *Apprendi* requires that any factor that increases a defendant's sentence beyond the statutory maximum must be established by proof beyond a reasonable doubt, *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), his sentence should be vacated.

The Supreme Court's holding in *Apprendi* does not apply to the Sentencing Guidelines. *United States v. Garcia*, 252 F.3d 838, 843 (6th Cir.2001). As long as the penalty does not exceed the maximum statutory penalty for the offense for which Hardin was convicted, there is no *Apprendi* error.

In this case, the jury made specific findings regarding the statutory threshold amounts for 21 U.S.C. § 841(b)(1)(A)—five kilograms or more of powder cocaine, and 50 grams or more of cocaine base. The government also filed a notice of enhancement pursuant to 21 U.S.C. § 851, based on Hardin's prior conviction for a felony drug offense. Therefore, the allowable statutory penalty range was 240 months to life. Hardin received 292 months, well within the statutory range. There was no *Apprendi* error.

IV.  Conclusion

For all of the reasons set forth above, we AFFIRM.