

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-20-2003

# USA v. Schofield

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1175

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Schofield" (2003). *2003 Decisions.* Paper 98.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/98

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1175

UNITED STATES OF AMERICA

v.

ROZONE SCHOFIELD,

Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal Action No. 02-cr-00008)
District Judge: Honorable Alan N. Bloch

Argued September 16, 2003

Before: ALITO, AMBRO and CHERTOFF, <u>Circuit Judges</u>

(Opinion filed:  November 20, 2003)

Frank Arcuri, Esquire (Argued)
DiSalle & Arcuri
90 West Chestnut Street
Suite 715 Millcraft Center
Washington, PA 15301

*Attorney for Appellant*

Mary Beth Buchanan
  United States Attorney
Bonnie R. Schlueter (Argued)
  Assistant United States Attorney
Office of the United States Attorney
633 United States Post Office & Courthouse
Pittsburgh, PA   15219

*Attorneys for Appellee*

OPINION

AMBRO, Circuit Judge

Rozone Schofield appeals his jury conviction for conspiring to possess, with intent to distribute, 50 grams or more of cocaine base in violation of 21 U.S.C. § 846. He claims that the District Court erred by not suppressing evidence obtained in violation of the Fourth Amendment and by failing to instruct the jury (i) on whether venue exists for this conspiracy and (ii) precisely as to the controlled substance involved. We affirm.

**I. Factual and Procedural History**

While typically a not precedential opinion contains a truncated telling of facts, the highly factual nature of Schofield's Fourth Amendment claim requires greater detail. On the morning of October 31, 2001 a Maryland State Trooper, Douglas Bittinger, stopped a motor vehicle when he observed it traveling at 86 miles per hour in Washington County, Maryland. Bittinger asked Schofield, the driver of the vehicle, for his license and the car's registration. The registration identified the backseat passenger, Donnie Dreher, as

the owner of the halted vehicle.  Bittinger ran a routine check on Schofield's driver's license and discovered that the license was suspended.  In Maryland, driving with a suspended license is punishable by incarceration.  Bittinger thereupon radioed for backup to assist him in arresting Schofield.

After securing Schofield in his patrol vehicle, Bittinger obtained permission from Dreher, the owner of the vehicle, to search its interior.  In the course of his search, Bittinger observed what appeared to be cigar tobacco.  He suspected that the loose tobacco indicated marijuana use, as "people who smoke marijuana will take cigars, unwrap the cigars, take the tobacco out of it, and place the marijuana back inside."  Bittinger then asked, and received, Dreher's consent to search the trunk as well.

In the trunk Bittinger observed a large laundry detergent box.  The box's pull tab remained intact, but the box had been taped at the top.  Bittinger lifted the box and noticed that it felt completely full and was heavier than he expected, given that laundry detergent boxes ordinarily have air space at the top.  Bittinger was aware that detergent is often used to mask the odor of drugs.  Upon inquiry, Dreher informed Bittinger that the box belonged to Schofield.  Bittinger then notified Dreher that he would be taking Schofield to the state police barracks for processing.  Dreher followed in his vehicle.

While in transit to the barracks, Bittinger asked Schofield who owned the detergent box, and he admitted ownership.  In response to further questioning, Schofield stated that he had used some of the detergent to wash his clothes and had taped it to

3

prevent spillage. He declined, however, Bittinger's request to open the box.

When he arrived at the barracks, Bittinger attempted to bring in a K-9 unit to conduct a drug sniff of Dreher's car. Meanwhile, Dreher asked first the Duty Officer and then Bittinger whether he could leave the barracks to eat. In response, Bittinger asked whether the box of detergent was still in the car and, if so, whether he would turn it over to the police. Bittinger testified that Dreher voluntarily opened the trunk and gave Bittinger the box. While returning to the barracks with the box, Bittinger again noted that the box seemed inordinately heavy. He weighed the box at the barracks, and the scales indicated a weight of 17 ½ pounds. The weight stated on the label of the box was 14 ¾ pounds.

Thereafter, Bittinger succeeded in speaking with a K-9 officer. His trained dog sniffed the room in which the detergent box had been placed and alerted Bittinger to the potential presence of controlled substances within the detergent box. Schofield then claimed that the box belonged to all occupants of the car.

After the K-9 alert, Bittinger obtained a warrant to search the box. Contained within the box were 275.5 grams of cocaine base ("crack cocaine") and 159.6 grams of cocaine hydrochloride ("powder cocaine").

At 4:25 p.m., Sergeant Mark Holtzman advised Schofield of his *Miranda* rights. Schofield then told Holtzman that the box contained cocaine and that he was supposed to receive part of the cocaine upon arrival in Pittsburgh. He also implicated the front-seat

4

passenger of the car as well as Dreher. Schofield provided a written statement detailing

his involvement in obtaining the cocaine and transporting it from Washington, D.C. to

Pittsburgh.[1]

Schofield was indicted by a grand jury in the Western District of Pennsylvania for

violating 21 U.S.C. § 846, in this case conspiring to possess, with the intent to distribute,

50 grams or more of cocaine base. Prior to trial, Schofield's counsel filed a motion to

suppress physical evidence and statements. The District Court, after a pretrial conference

and hearing, granted the motion only with respect to the statements made by Schofield

prior to receiving his *Miranda* warnings. A jury found Schofield guilty. The District

---

[1]Schofield's unedited statement, which was admitted at the suppression hearing and at trial, reads as follows:

> Today I was driving back from D.C. when I was stopped by the state police. The police searched the car and found a box of laundry detergent in the trunk the police asked whose box it was and I told them it was ours for our laundry, we then went to state police barricks where he asked me what was up with the tape on the box I told him Carlos dropped the box on the ground and I retaped it. I was then read my rights by the police and they asked me whose dope was in the box. I then told them what the truth was, the truth is that Carlos, Larry, & I came Beaver Falls to D.C. over the weekend Carlos had about 19 to $25K in his possession we went out over the weekend we went to this girl Jan's house where Carlos bought in a detergent box with dope in it we wrapped it up in saran wrap, one of the pkgs was in a potato chip bag. We then put petroleum jelly over it then rewrapped it in saran wrap. I then sealed the box with tape. The next day Carlos put the box in the car then we left out to head home.
>
> Carlos lives in Detroit or Pontiac Michigan, he makes trips every week from there to PA to sell dope. I have bought anywhere from 4 ½ to 9 ozs of (soft) cocaine from Carlos in the past.

5

Court sentenced him to 135 months of incarceration, followed by five years of supervised release.  He appeals.

We exercise plenary review of the District Court's findings as to the lawfulness of the search; the underlying factual findings are reviewed for clear error.  *Ornelas v. United States,* 517 U.S. 690, 699-700 (1996).  When reviewing whether the District Court's jury instructions stated the proper legal standards, we exercise plenary review.  *Government of Virgin Islands v. Isaac*, 50 F.3d 1175, 1180 (3d Cir. 1995).  The District Court had jurisdiction over the federal criminal prosecution under 18 U.S.C. § 3231.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. Discussion

A. Fourth Amendment Claim

Schofield argues that the detergent box was unlawfully seized and detained, and thus the District Court erred by not suppressing it.  We disagree, as the box was searched based upon Trooper Bittinger's reasonable, articulable suspicion of criminal activity.

As a threshold matter, the Government asserts that Schofield has waived this claim because his motion to suppress was insufficiently detailed.  Schofield's motion stated merely that "[t]he police examination of the box without a warrant was unconstitutional in violation of the Fourth Amendment to the United States Constitution."  Moreover, he did not develop this issue in his memorandum of law filed in the District Court or at the suppression hearing.  Without doubt greater exposition of this argument in the District

6

Court is preferable. Yet Schofield's motion was sufficient "to serve notice as to the underlying basis for the objection." *United States v. Russell*, 134 F.3d 171, 179 (3d Cir. 1998). Thus we move to the merits.

In deciding the merits, we note at the outset that Schofield has no standing to contest any detention of the automobile's owner or its other passenger.[2] In this context, Schofield's argument that "the continued questioning and seizure of the owner [and] remaining passenger . . . following [his] arrest lacked probable cause as well as reasonable, articular [sic] suspicion" is unavailing. Appellant's Brief at 19.

Whether Schofield has standing to challenge an unlawful search of the vehicle itself is a closer question. In *United States v. Baker*, 221 F.3d 438, 442 (3d Cir. 2000), we explained that "whether the driver of a car has the reasonable expectation of privacy necessary to show Fourth Amendment standing is a fact-bound question dependent on the strength of his interest in the car and the nature of his control over it; ownership is not necessary." The facts unique to that case--Baker was alone in a borrowed car and had been driving it, with the owner's permission, for four to six weeks--resulted in the expectation of privacy. Yet the normal course is that when the owner of a vehicle is traveling with a non-owner driver, the latter has no reasonable expectation of privacy in

---

[2]The alleged "detention" of Dreher and the third passenger was, in any case, almost certainly consensual. Dreher volunteered to follow Bittinger to the barracks in order to determine what would happen to Schofield. Moreover, to the extent that Dreher consented to the search of his vehicle, he consented to be detained for the duration of that search. *See, e.g., United States v. Sukiz-Grado*, 22 F.3d 1006, 1009 (10th Cir. 1994).

7

the vehicle because a reasonable person would expect that the owner can handle or remove any item within the vehicle. *See United States v. Jefferson*, 925 F.2d 1242, 1248-49 (10th Cir.), *cert. denied*, 502 U.S. 884 (1991); *United States v. Lochan*, 674 F.2d 960, 965-66 (1st Cir. 1982).

But we need not decide this standing aspect today. For even if we assume that Schofield had a reasonable expectation of privacy in Dreher's vehicle for Fourth Amendment standing purposes, nothing in the record indicates that its search was anything but consensual. Schofield was lawfully stopped for a traffic violation, and he was lawfully arrested for driving without a license. Bittinger did not act unlawfully by asking Dreher for permission to search the vehicle, nor was he under any constitutional obligation to inform Dreher that he need not consent. *Ohio v. Robinette*, 519 U.S. 33, 39-40 (1996).[3]

---

[3]The discussion does not address whether Dreher could properly have consented to Bittinger's search and seizure of the detergent box. First, it is unclear whether Dreher had a property interest in the box. While Schofield initially declared possession and declined to consent to a search, Bittinger testified that Schofield later claimed that the box belonged to all three occupants of the car. The Government argues that even if Dreher had no possessory interest in the box, he was nonetheless entitled to authorize its seizure and subsequent search because Schofield, by stowing the box in Dreher's car, had forfeited his privacy right in it. In other words, the Government suggests that Dreher's right to remove Schofield's belongings from his car precluded Schofield from asserting a privacy interest in those objects as against the police. *But cf. United States v. Jefferson*, 925 F.2d 1242 (10th Cir. 1991) ("Because [the owner] was present in the car, he was constantly in a position to assert his possessory interest [in the car] to the extent that he desired to do so. . . .") Because we find that Bittinger acted permissibly on other grounds, we need not resolve this issue.

8

Schofield prevails on his Fourth Amendment claim only if he can establish that Bittinger's seizing, and subsequent searching, of the *detergent box* was unlawful. The principal issues are whether Bittinger violated Schofield's Fourth Amendment rights (1) when he lifted the box during his search of Dreher's vehicle, and (2) when he later took the box from Dreher's car to the police barracks.

As to the former incident, Dreher's consent to a search of the vehicle is dispositive. Bittinger noted loose cigar tobacco, potentially indicative of marijuana use, in the passenger compartment of the vehicle. He then obtained Dreher's consent to search the trunk. Bittinger almost certainly did not seize the detergent box merely by lifting it. *See United States v. Hall*, 978 F.2d 616, 619 (10th Cir. 1992) ("Agent['s] lifting of Defendant's suitcase did not constitute a seizure because this interference with Defendant's possessory interests in her suitcase was minimal"). While it is arguable that moving the box was a search, *see Arizona v. Hicks*, 480 U.S. 321, 324-25 (1987) ("[T]he 'distinction between 'looking' at a suspicious object in plain view and 'moving' it even a few inches' is much more than trivial for purposes of the Fourth Amendment. It matters not that the search uncovered nothing of any great personal value to respondent. . . . A search is a search. . . ."), this act was within the scope of Dreher's consent. Bittinger received Dreher's unrestricted permission to search the trunk. A reasonable person would understand Dreher's consent to allow Bittinger's touching and moving objects within the trunk. *Cf. Florida v. Jimeno*, 500 U.S. 248, 251 (1991).

9

That the search was minimally intrusive means much. Had Bittinger opened the box during the course of his search, he might have exceeded what a reasonable person would have understood as the limits of Dreher's consent. We do not decide today whether Dreher was capable of consenting to an invasive search of Schofield's belongings. Bittinger did not open any containers within the trunk. Rather, he merely lifted one object in the trunk in the course of inspecting its contents.

Schofield's limited privacy interest in the detergent box is also significant. Courts have recognized that the owners of such items as briefcases and luggage have high expectations of privacy in them because they contain potentially personal items. *See Bond v. United States*, 529 U.S. 334, 337-38 (2000) ("[T]ravelers are particularly concerned about their carry-on luggage; they generally use it to transport personal items that, for whatever reason, they prefer to keep close at hand.") By contrast, an innocent person's expectation of privacy in a box of detergent is almost always low. Whatever his privacy interest in the box's contents, Schofield's privacy interest in the *weight* of the detergent was minimal at best. *Cf. United States v. Jacobsen*, 466 U.S. 109, 123 (1984) ("A chemical test that merely discloses whether or not a particular substance is cocaine does not compromise any legitimate interest in privacy. . . . [G]overnmental conduct that can reveal whether a substance is cocaine, and no other arguably 'private' fact, compromises no legitimate privacy interest.")

We therefore conclude that Bittinger's initial handling of the detergent box was

10

constitutionally permissible, and we turn to the seizure of the detergent box at the police barracks. Detaining the box to arrange for a drug sniff was justified by Bittinger's reasonable, articulable suspicion that it contained drugs.[4]

The Supreme Court has held that a police officer may act upon reasonable, articulable suspicion of criminal activity--short of probable cause--if the governmental action is minimally intrusive of the individual's Fourth Amendment interests and the opposing law enforcement interests are great. *United States v. Place*, 462 U.S. 696, 703-05 (1983). Bittinger's conduct in subjecting the detergent box to a K-9 unit dog sniff was minimally intrusive. The Government's interest in preventing the trafficking of drugs is substantial. *Id.* at 703 ("[W]here the authorities possess specific and articulable facts warranting a reasonable belief that a traveler's luggage contains narcotics, the governmental interest in seizing the luggage briefly to pursue further investigation is substantial.") The constitutionality of the seizure thus turns on whether Bittinger acted upon reasonable, articulable suspicion.

The District Court identified four facts indicating that he did: (1) "the unusual manner in which the box was taped," (2) "the trooper's knowledge that detergent is often used to mask the scent of drugs," (3) "the fact that the box felt heavier than the total

---

[4]Because we find that Bittinger acted upon reasonable, articulable suspicion when he seized the box, we do not decide whether Dreher was capable of consenting, as the bailee of Bittinger's belongings, to the removal of the detergent box.

11

weight identified on the outside of the package,"[5] and (4) "the trooper witnessed other evidence of drug use in the front seat of the car at issue." As the District Court noted, "conduct which would be wholly innocent to the untrained observer . . . might acquire significance when viewed by an agent who is familiar with the practices of drug smugglers and the methods used to avoid detection." *United States v. Wallraff*, 705 F.2d 980, 988 (8th Cir. 1983) (quoting *United States v. Mendenhall*, 446 U.S. 544, 563 (1980)). In evaluating the validity of a seizure like the one before us, we consider the totality of the circumstances. *United States v. Sokolow, 490 U.S. 1 (1989).* Here it appears from the record that Bittinger, in light of his observations, training, and substantial experience, had ample grounds for suspicion. The District Court correctly concluded that Bittinger acted upon reasonable, articulable suspicion--and thus squarely within the bounds of the Fourth Amendment--when he detained the detergent box for the purposes of arranging a K-9 drug sniff.

B. Venue

Schofield urges us to reverse the District Court's judgment because the Court failed to instruct the jury on the issue of venue. He contends that he has met the three criteria noted by this Court in *United States v. Perez*, 280 F.3d 318, 327 (3d Cir. 2002),

---

[5]Schofield suggests that Bittinger could not permissibly consider the perceived discrepancy in weight because the initial lifting of the box was an unlawful search. Because, as noted, we conclude that Dreher consented to Bittinger's movement of the trunk's contents, that argument fails.

12

for establishing reversible error:

> [W]here the indictment alleges venue without a facially obvious defect, the failure to instruct the jury to determine whether that venue is proper is reversible error only when (1) the defendant objects to venue prior to or at the close of the prosecution's case-in-chief, (2) there is a genuine issue of material fact with regard to proper venue, and (3) the defendant timely requests a jury instruction.

Schofield asserts that the Government placed venue in issue because it did not prove, by a preponderance of the evidence, that the conspiracy charged was formed--or that an overt act in furtherance of the conspiracy occurred--in the Western District of Pennsylvania (where the case was tried). There is no evidence, he suggests, that he was a member of any conspiracy when he left Beaver Falls, Pennsylvania for Washington, D.C. Given that the stop, arrest, and seizure all occurred in Maryland, Schofield concludes that the District Court erred in refusing to charge the jury on the issue of venue, thus precluding it from deciding that issue.

As we noted in *Perez*, 280 F.3d at 335 n.12, "Having made a timely objection, the defendant normally needs to present testimony that places venue in issue at any time prior to the close of evidence." Schofield failed to present any such evidence at trial. *Perez*, however, goes on to provide: "Alternatively, the court may find that the Government's testimony places venue in issue notwithstanding the defense presentation." *Id*.

At the close of the Government's case, Schofield moved for acquittal on the ground of improper venue in the Western District of Pennsylvania. The District Court

13

denied the motion with considerable support.  The Government offered testimony, based on Schofield's confession, to the effect that Schofield left Beaver Falls in the company of his co-conspirators and with the intent together to purchase cocaine in Washington, D.C. Schofield confessed that he and his companions were en route to Pittsburgh when their car was stopped and that Schofield was to receive part of the cocaine on arrival in Pittsburgh.  He also confessed to purchasing cocaine from his co-conspirator in Pittsburgh on a weekly basis.  This evidence was certainly adequate to establish venue.

C. The Specificity of the Indictment

Finally, Schofield argues that the District Court erred by using the general term "controlled substance," rather than the precise substance charged in the indictment, in the jury instructions.[6]  In other words, Schofield contends that the Government must demonstrate that he was engaged in a conspiracy specifically to distribute crack cocaine. That misses the mark.  The Government must prove only that the defendant conspired to

---

[6] The variance between the indictment and the jury instructions is not reversible error. "To show prejudice, a defendant must generally show that the indictment either did not sufficiently inform him of the charges against him so that he could prepare his defense and not be misled or surprised at trial or that the variance created a danger that the defendant could be prosecuted a second time for the same offense." *United States v. Balter*, 91 F.3d 427, 441 (3d Cir. 1996). *Cf. United States v. Sheppard*, 219 F.3d 766, 770 (8th Cir. 2000) ("[A] defendant may be convicted of a drug conspiracy violation without proof that he knew the precise drug he conspired to possess and distribute. . . . The district court's instructions required the jury to find that the drug in question was methamphetamine, and that Sheppard knew it was a controlled substance. . . . There was no material variance because the instructions only took away a 'non-defense'--that Sheppard knew it was *a* controlled substance, but not *the* controlled substance, methamphetamine.").

14

distribute a controlled substance.

The indictment charged a conspiracy to possess with intent to distribute "in excess of 50 grams or more of cocaine base in the form commonly known as crack." Given this indictment, Schofield's theory of defense was that he did not know the box contained crack cocaine, but rather thought that it contained powder cocaine. Schofield's efforts at trial were misplaced. "[T]he structure and plain text of § 841 affords no support for a requirement that the Government must prove more than the defendant's knowledge that he was trafficking in a controlled substance." *United States v. Barbosa*, 271 F.3d 438, 458 (3d Cir. 2001), *cert. denied*, 537 U.S. 1049 (2002).

Schofield argues that this analysis applies only to the *mens rea* (or intent) portion of the substantive offense. A conspiracy conviction, he contends, requires something more. We disagree. Section 846 specifically states that "any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt of conspiracy." Every Court of Appeals that has addressed this issue has extended the reasoning underlying *Barbosa* to conspiracy cases. *See United States v. Villarce*, 323 F.3d 435, 439 n.1 (6th Cir. 2003); *United States v. Collazo-Aponte*, 281 F.3d 320, 326 (1st Cir.), *cert. denied*, 537 U.S. 869 (2002); *United States v. Carrera*, 259 F.3d 818, 830 (7th Cir. 2001); *United States v. Sheppard*, 219 F.3d 766, 768 n.22, 770 (8th Cir. 2000).

To be sure, there can be no conspiracy where there is no meeting of the minds.

15

However, a co-conspirator need not be aware of the precise details of the scheme as long as the Government can establish a common purpose. *See United States v. Russell*, 134 F.3d 171, 183 (3d Cir. 1998). The District Court thus did not err by charging the jury to determine whether Schofield conspired to distribute a controlled substance. The jury found that Schofield and his co-conspirators sought to advance the common unlawful object of distributing controlled substances in violation of § 841, and Schofield was properly convicted on that charge.

## III. Conclusion

Because the District Court properly admitted the physical evidence at issue, and because the jury instructions were legally sufficient, we affirm Schofield's conviction.

_____

TO THE CLERK:

Please file the foregoing Not Precedential Opinion.

By the Court,

/s / Thomas L. Ambro

_____

Circuit Judge