NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0564n.06

No. 19-3838

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Oct 05, 2020 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| TYLER MATTHEW D'JUAN HALL, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:     DAUGHTREY, DONALD, and READLER, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.  After a jury convicted defendant Tyler Matthew D'Juan Hall of numerous drug and firearms offenses, the district court sentenced him as a career offender to 444 months in prison and ordered the forfeiture of guns, ammunition, and currency connected to the offenses.  On appeal, Hall now challenges the legal sufficiency of the evidence used to convict him and the appropriateness of the sentence imposed upon him.  We find no merit to the challenges properly before us and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Upon receiving information that Tyler Hall was involved in the distribution of controlled substances in Cleveland, Ohio, members of the Cleveland Police Department began surveilling Hall in May 2018.  While doing so, Detective Thomas Klamert observed Hall regularly traveling between two buildings that are basically across the street from each other, one ostensibly an auto body shop at 3179 West 104th Street in Cleveland, and the other a corner building at 10400 Lorain

Avenue that formerly housed a bar and then a coffee shop but that now was vacant except for a residential apartment in the rear of the structure.

As part of the surveillance activities, Klamert orchestrated a trash pull of the garbage from the residence on Lorain Avenue and recovered plastic sandwich baggies containing drug residue. From subsequent checks with utility companies, Klamert learned that the utilities for both the residence and for the auto body shop were listed in Hall's name. In light of information obtained from those various sources, Klamert arranged for a confidential informant to make drug buys from Hall on the following dates, at the following locations, and with the following results:

| | |
|---|---|
| June 21, 2018: | 0.18 grams of fentanyl purchased at Hall's residence; |
| June 22, 2018: | 0.08 grams of fentanyl purchased at the body shop; |
| June 25, 2018: | 0.22 grams of cocaine base (crack cocaine) with the transaction beginning at the body shop but concluding at Hall's residence; |
| June 27, 2018: | 0.34 grams of  crack cocaine purchased at the body shop; and |
| July 2, 2018: | 0.21 grams of fentanyl purchased at Hall's residence. |

Armed with that evidence, Klamert obtained search warrants for the Lorain Avenue residence and for the West 104th Street body shop. On July 3, 2018, Cleveland police and agents from the Drug Enforcement Administration (DEA) simultaneously entered the two buildings, resulting in the arrest of Hall in the body shop. From Hall's person, authorities recovered two cell phones,[1] keys to both the residence and the body shop, and $1,152 in cash. Outside the back door where officers had seen Hall enter the body shop, authorities also recovered a black bag that Hall previously had been seen carrying and that contained a fully loaded 9 millimeter Beretta semi-automatic handgun, a bag of marijuana, and a utility bill addressed to Hall.

---

[1] Although both cell phones were taken from the pockets of the shorts that Hall was wearing, he denied ownership of a flip phone that the police recovered. He admitted, however, that he was the owner of the second phone, an iPhone X. He also denied that he lived at the residence from which he had been seen leaving on multiple occasions and to which he possessed keys.

During the search of Hall's residence, law enforcement officers observed a table, on top of which were various items of drug paraphernalia, a digital scale with drug residue on it, 22.13 grams of crack cocaine, and 1.46 grams of fentanyl. From the second shelf of the table, the authorities confiscated a loaded Walther Arms 9 millimeter semi-automatic pistol and a bag containing approximately $6,000 in cash. In the bedroom of the residence, officers found a digital scale with drug residue on it, a razor blade, two bags containing a total of 351.64 grams of marijuana, and a shoebox containing $1,137 in one-dollar bills. They also recovered three boxes of ammunition, two bullet-proof vests, rent receipts and utility bills in Hall's name for both the Lorain Avenue and West 104th Street buildings, and other mail addressed to Hall at yet a third Cleveland location.

Hall was released from custody less than a week after his arrest, but on July 19, 2018, based on additional information he had received, Klamert executed an arrest warrant for Hall at the third Cleveland location, the home of Hall's grandmother on Puritas Avenue. Upon entering the residence, police observed Hall either in a bedroom or just walking out of the bedroom toward the adjacent kitchen/dining area at which other individuals were seated. On the kitchen table was a digital scale, drug residue, drug-packaging material, a cell phone banded together with 143 one-dollar bills, and a bag containing 31.45 grams of marijuana. Furthermore, on a nearby couch, police found a second bag containing 3.26 grams of crack cocaine and a third bag containing 4.17 grams of a mixture of heroin, fentanyl, and cocaine. At the time of this second arrest, Hall had on his person $1,342 in cash, as well as various prepaid cards.

Based solely upon the evidence recovered during the July 3 searches of Hall's residence and the auto body shop, a federal grand jury returned a four-count indictment against the defendant, charging him with possession with intent to distribute 22.13 grams of crack cocaine (Court 1), possession with intent to distribute 1.46 grams of fentanyl (Count 2), being a felon in possession

of the Beretta semi-automatic pistol and ammunition (Count 3), and being a felon in possession of the Walther Arms semi-automatic pistol and ammunition (Count 4). The indictment further sought forfeiture of both firearms, the ammunition, and $7,192 in cash. In an effort to protect the identities of confidential informants whose assistance led to Hall's arrest, the government initially agreed that Hall could request a 188-month prison sentence in exchange for guilty pleas to the charges in the original indictment, which was returned a mere five days after Hall's July 19 arrest. Hall chose not to accept those terms, however.

After accumulation of additional information regarding the extent of Hall's drug-trafficking activities, the government later secured a 14-count superseding indictment against Hall. That indictment charged Hall as follows:

| Count 1: | Distribution of 0.18 grams of fentanyl on June 21, 2018; |
|---|---|
| Count 2: | Distribution of 0.08 grams of fentanyl on June 22, 2018; |
| Count 3: | Distribution of 0.22 grams of cocaine base on June 25, 2018; |
| Count 4: | Distribution of 0.34 grams of cocaine base on June 27, 2018; |
| Count 5: | Distribution of 0.21 grams of fentanyl on July 2, 2018; |
| Count 6: | Possession with intent to distribute 22.13 grams of cocaine base on July 3, 2018; |
| Count 7: | Possession with intent to distribute 1.46 grams of fentanyl on July 3, 2018; |
| Count 8: | Possession with intent to distribute 382.42 grams of marijuana on July 3, 2018; |
| Count 9: | Felon in possession of a Beretta 9 millimeter semi-automatic pistol and ammunition on July 3, 2018; |
| Count 10: | Felon in possession of a Walther Arms 9 millimeter semi-automatic pistol and ammunition on July 3, 2018; |
| Count 11: | Possession of the Beretta and Walther Arms pistols in furtherance of a drug-trafficking crime on July 3, 2018; |
| Count 12: | Possession with intent to distribute a mixture containing 4.17 grams of heroin, fentanyl, and cocaine on July 19, 2018; |
| Count 13: | Possession with intent to distribute 3.26 grams of crack cocaine on July 19, 2018; and |
| Count 14: | Possession with intent to distribute 31.45 grams of marijuana on July 19, 2018. |

Furthermore, as in the original indictment, the superseding indictment sought forfeiture of certain proceeds of the alleged criminal activity, including the two firearms and ammunition, as well as a total of $9,821 in cash.

Again, the government sought to enter into a plea agreement with Hall in an effort to avoid a trial at which the identity of one or both of the confidential informants who assisted the police would be revealed. Because of the additional charges in the superseding indictment, the government's second plea offer recommended an increased prison term of 211 months. Hall refused to enter into that agreement as well and proceeded to trial on the 14-count indictment.

During its case-in-chief, the government offered testimony from one confidential informant who participated in the five purchases of drugs from Hall, as well as testimony from law enforcement officers and forensic chemists who detailed the findings of the July 3 and July 19, 2018, searches of Hall's Lorain Avenue residence, of the body shop, and of the Puritas Avenue residence. Detective Klamert offered additional testimony regarding information extracted from the iPhone seized from Hall. In detailing the substance of text messages recovered from the phone, Klamert explained that Hall, in addition to making relatively small, street-level drug sales to the government's confidential informant, purchased large quantities of controlled substances from individuals identified only as Hell and Nico. The text exchanges also indicated that Hall then sold those drugs to other individuals either for further resale or for those individuals' own use.

As was his constitutional prerogative, Hall did not testify at trial in his own defense. Nevertheless, the defense did offer the testimony of Julie Altizer, a forensic scientist in the DNA Unit of the Ohio Bureau of Criminal Investigation. Altizer testified that DEA agents asked her to attempt to identify DNA found on the firearms recovered from Hall's residence and from the black bag Hall had been seen carrying. She was unable to do so, however, because "there was so much

DNA on both of these guns that [she] couldn't use it to make any sort of comparison, at all." In fact, Altizer claimed that the DNA of "five or more people" could have been on the firearms.

At the conclusion of the four-day trial, the jury found Hall guilty of all 14 counts of the superseding indictment. The U.S. Pretrial Services and Probation Office then prepared a presentence report (PSR), concluding that Hall's base offense level under the applicable United States Sentencing Guidelines provisions was 24. However, because Hall had numerous prior felony convictions for drug possession and drug trafficking, two prior felony convictions for weapon-related offenses, and prior felony convictions for robbery, aggravated robbery, and intimidation of a crime victim or witness, the PSR recommended that the district court consider Hall a "career offender" pursuant to the provisions of U.S.S.G. § 4B1.1. Application of those provisions, given Hall's adjusted base offense level and criminal history score, would result in a Guidelines sentencing range of 360 months to life imprisonment.

During his sentencing hearing, Hall requested a downward variance based on his diminished capacity and suggested that the severe Guidelines sentencing range amounted to punishment for his decision to exercise his right to a jury trial. Hall's counsel noted that the government initially had offered a lower sentence with the plea agreement, but because Hall refused to accept the agreement, the government subsequently proposed a lengthier sentence.

In response, the government clarified that it had offered a sentence of 211 months, contingent on Hall's agreement to plead guilty to the superseding indictment, thus ensuring that the identity of government informants would not be revealed at a trial. According to the government, it was concerned for the safety of its informants given Hall's prior history of witness intimidation and stated:

> [Hall] wanted to know who the other informant was, because there were
> two informants that made buys off of him, and we only chose to present one

> at trial. So what he wanted was to know was who was snitching, and if you read some of his lyrics that are on his phone, if you read the tattoo on his body, it says, "Stop snitching."

The government also noted that it "didn't know at the time when [it] offered that 211-month C agreement . . . some of the details of [Hall's] communications with his coconspirators," which later were recovered from Hall's seized iPhone.

The district court denied Hall's request for a downward departure for diminished capacity, noting that Hall had a GED and sufficient mental capacity to run a business. The district court then analyzed the relevant sentencing factors, particularly noting Hall's prior criminal history of similar drug offenses and the fact that "prior sanctions and sentences have not been effective in deterring Mr. Hall from continuing to distribute drugs" that have caused overdoses and deaths in the community. Accepting the government's statement that it had made a plea offer to Hall to protect the identities of confidential informants, the district court rejected Hall's argument that the recommended sentence constituted a "trial tax." The district court concluded that Hall was "a serious threat to the community and a proven recidivist" and sentenced him to 444 months' imprisonment[2] to be followed by ten years of supervised release. The district court also ordered the forfeiture of the firearms, ammunition, and cash recovered from Hall and imposed a special assessment of $1,400. From that verdict and sentencing determination, Hall now timely appeals.

## DISCUSSION

### Legal Sufficiency of the Evidence Used to Convict Hall

Hall first argues that his convictions cannot stand because the government's case against him relied on "thin" proof of only his constructive possession of drugs and firearms and upon the

---

[2] The prison sentence was composed of 360-month sentences for the drug-distribution and drug-trafficking offenses and 120-month sentences for the felon-in-possession counts, all to run concurrently, and a consecutive 84-month sentence for the possession of a firearm in furtherance of drug-trafficking.

testimony of a "drug-addicted confidential informant." Ordinarily, we examine such claims in accordance with well-established and often-cited legal principles. Specifically, we have noted that when challenging the legal sufficiency of the evidence to support a guilty verdict, the defendant bears a "heavy burden." *United States v. Pritchett*, 749 F.3d 417, 431 (6th Cir. 2014) (citation omitted). We ask simply "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Moreover, "[w]e do not insert our own findings of fact; rather, we give full credit to the responsibility of the jury to weigh the evidence, to make credibility determinations, and to draw inferences." *United States v. Washington*, 715 F.3d 975, 979 (6th Cir. 2013) (citing *Jackson*, 443 U.S. at 319).

In this appeal, however, the government submits that our review should be restricted even further because Hall failed to renew his motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure at the close of all the proof. Hall did move for a judgment of acquittal at the close of the government's case-in-chief, but, after the district court denied that initial motion, he failed to renew that motion at the close of all the evidence. Consequently, the government asserts that Hall's challenge to the sufficiency of the evidence must be reviewed under the more lenient manifest-miscarriage-of-justice standard. *See, e.g.*, *United States v. Kuehne*, 547 F.3d 667, 697 (6th Cir. 2008). When applying that standard, we will reverse a conviction only "if the record is devoid of evidence pointing to guilt." *United States v. Carnes*, 309 F.3d 950, 956 (6th Cir. 2002) (internal quotation marks and citation omitted).

In reply to that assertion by the government, Hall advances an argument seeking to explain why his failure to renew his Rule 29 motion should be excused. We need not delve into this

dispute, however, because the proof of Hall's guilt of the various offenses meets both the stricter *Jackson* standard and the manifest-miscarriage-of-justice standard.

### 1. Distribution-of-Controlled-Substance Offenses (Five Counts)

The jury convicted Hall of five separate counts of distribution of a controlled substance relating to the purchases of fentanyl and crack cocaine by a confidential informant. Pursuant to the provisions of 21 U.S.C. § 841(a)(1), "it shall be unlawful for any person knowingly or intentionally to . . . distribute . . . a controlled substance." Thus, in order to establish a defendant's guilt of a distribution offense, the government need prove only "an intent to distribute a controlled substance." *United States v. Villarce*, 323 F.3d 435, 439 (6th Cir. 2003) (citing *United States v. Garcia*, 252 F.3d 838, 844 (6th Cir. 2001)). It is not incumbent upon the prosecution to "prove mens rea as to the type and quantity of the drugs." *Garcia*, 252 F.3d at 844.

The government easily met its burden of proof in establishing Hall's guilt of these five counts of the superseding indictment. Not only did the confidential informant offer in-court testimony regarding his purchase of the drugs from Hall, but two of the five drug transactions were recorded surreptitiously by both hidden audio and hidden video. Law enforcement officials also maintained surveillance of the area of the drug transactions to ensure that the confidential informant met with no person other than the defendant. Moreover, when consummating the drug purchases from Hall, the confidential informant was directed by the defendant himself to request "white liquor" if he wished to purchase crack cocaine or "brown liquor" if he wished to purchase heroin/fentanyl.

Despite this overwhelming proof of guilt of the distribution charges, Hall contends that the testimony of the confidential informant should not be believed because the informant was himself a drug addict. At trial, however, defense counsel was given the opportunity to cross-examine the

witness in order to expose potential bias or lack of trustworthiness. Also, as stated earlier, on appeal from a jury's guilty verdict, we are not to reexamine the credibility determinations of the finders of fact. We thus conclude that there is sufficient evidence to support the jury's finding that Hall intended to, and did indeed, distribute controlled substances.

### 2. Possession with Intent to Distribute Controlled Substances (Six Counts)

In six other counts of the superseding indictment, the government charged Hall with additional violations of 21 U.S.C. § 841(a)(1) for possession with intent to distribute controlled substances on July 3, 2018, and on July 19, 2018. The elements of such possession offenses are "(1) knowingly or intentionally, (2) possessing, (3) with the intent to distribute, (4) a controlled substance." *United States v. Monger*, 185 F.3d 574, 576 n.2 (6th Cir. 1999). On appeal, Hall argues that the government failed to establish that he intended to "distribute" any controlled substances or that he had even constructive possession of the drugs found during the July 3 and 19 searches. Both of these contentions also are without merit.

"For the 'intent to distribute' element, distribution is defined broadly to include, among other things, sales." *United States v. Benton*, 957 F.3d 696, 701 (6th Cir. 2020) (citations omitted). "[I]ntent to distribute a controlled substance has been inferred solely from possession of a large quantity of the substance." *United States v. White*, 932 F.2d 588, 590 (6th Cir. 1991) (internal quotation marks and citation omitted). In this case, the jury concluded that Hall clearly intended to distribute or sell certain controlled substances due to the large quantities of the drugs found in his constructive possession—22.13 grams of crack cocaine; 1.46 grams of fentanyl; 382.42 grams of marijuana; 4.17 grams of a mixture containing heroin, fentanyl, and cocaine; 3.26 grams of crack cocaine; and 31.45 grams of marijuana—amounts that were determined to be distribution quantities.

Hall also argues, however, that the evidence of his constructive possession of those drugs is too "thin" to support his convictions. Possession of controlled substances can be either actual or constructive and may be proved by circumstantial evidence. *United States v. Murphy*, 107 F.3d 1199, 1208 (6th Cir. 1997). "Constructive possession exists when a person knowingly has the power and intention at a given time to exercise dominion and control over an object not in his or her actual possession." *United States v. Reed*, 141 F.3d 644, 651 (6th Cir. 1998) (internal quotation marks and citations omitted). In order to prove constructive possession, however, "it is not necessary that every reasonable hypothesis except that of guilt be removed." *Id.*

Although "[p]hysical proximity to drugs, or mere presence in an area where drugs are found, is not sufficient" to prove constructive possession, *White*, 932 F.2d at 589, the government offered evidence in this case to establish Hall's dominion and control over the drugs he was charged with possessing with intent to distribute. The drugs referenced in Counts 6, 7, and 8 of the superseding indictment that were found during the July 3, 2018, search either were in a black bag that Hall was seen carrying on multiple occasions that contained, among other items, a utility bill in Hall's name for the location where it was found, or were in the residence to which he had the keys and for which various utility bills and other mail in his name were found.

Similarly, the government proved Hall's dominion and control over the drugs found during the July 19, 2018, search that were the subject of Counts 12, 13, and 14 of the superseding indictment. Those controlled substances were recovered from a residence at which Hall also received mail. The defendant further admitted that the 31.45 grams of marijuana found in the house belonged to him and that he owned the previously confiscated iPhone that contained messages detailing Hall's large-scale drug transactions involving the other substances found at the

residence. Viewed in the light most favorable to the government, such evidence is sufficient to establish Hall's guilt of the charges of possession of controlled substances with intent to distribute.

### 3. Possession of a Firearm or Ammunition by a Felon (2 Counts)

Hall does not dispute on appeal that he previously had been convicted of crimes designated as felonies. He does assert, however, that the government failed to adduce sufficient evidence at trial to establish his constructive possession of the 9 millimeter Beretta found on July 3, 2018, in the black bag recovered near the rear door of the auto body shop rented by the defendant and the 9 millimeter Walther Arms found that same day in Hall's residence. Furthermore, for the first time in his reply brief, he alleges that the government failed to prove his knowledge that he was barred from possessing a firearm. *See Rehaif v. United States*, 139 S. Ct. 2191 (2019).

"Proof that the person has dominion over the premises where the firearm is located is sufficient to establish constructive possession." *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009) (footnote, internal quotation marks, and citations omitted). In this case, the Beretta was found in the black bag that Hall had been seen carrying, a bag that also contained marijuana and a utility bill in Hall's name. Furthermore, a cell phone confiscated from Hall contained photographs in which the defendant is "wearing the black bag that had the gun in it, and he's standing right in front of the door where during the search . . . that bag and the gun were found just behind him right outside of that door." Viewing that evidence in the light most favorable to the prosecution, the government established that Hall had constructive possession of the 9 millimeter Beretta semi-automatic pistol.

Similarly, the evidence adduced at trial was sufficient to establish Hall's constructive possession of the 9 millimeter Walther Arms semi-automatic firearm. That weapon was found in a residence rented by Hall, to which Hall had the keys, and to which utilities charged to Hall were

provided. Additionally, the gun was found on the second shelf of a table in Hall's residence that appeared to be "the drug preparation and drug dealing station because of all the drug paraphernalia that was on top of [it]." Again, viewing such evidence in the light most favorable to the government, the fact that the gun was found in Hall's residence at a table that was used to package drugs that Hall was known to distribute establishes that the second firearm also was in the constructive possession of the defendant.

Hall insists, however, that even if his constructive possession of the firearms can be established, he cannot be convicted of the felon-in-possession charges because the government failed to prove that he was aware that he was prohibited from possessing the guns. It is true that the United States Supreme Court now has held "that in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200. It also is true that on January 25, 2019, prior to the release of the decision in *Rehaif*, the district court instructed the jury in this case as follows:

> It is not necessary for the government to prove that the defendant knew that the firearm and/or ammunition previously traveled across a state line. *Nor is the government required to prove that at the time of the possession, the defendant knew that he was breaking the law.* It is sufficient if you find beyond a reasonable doubt that he knowingly possessed the firearm and/or ammunition after being convicted of an offense punishable by a term of imprisonment exceeding one year, and you find that the firearm and/or ammunition had crossed a state line before the defendant is alleged to have possessed it.

(Emphasis added.)

Despite the district court's understandable inability to predict the outcome of *Rehaif*, we find no need to disturb the jury verdict on the two felon-in-possession counts of the superseding indictment. Hall did not raise his *Rehaif* issue until he filed his reply brief in this matter. "We have consistently held . . . that arguments made to us for the first time in a reply brief are waived."

*Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) (citation omitted). Because *Rehaif* was decided on June 21, 2019, and Hall did not file his opening brief on appeal until April 20, 2020, he had a full ten months to determine *Rehaif*'s applicability to his case. Under such circumstances, we see no reason to disregard the waiver of the issue.

In any event, despite the district court's jury instructions that now would be considered improper, it is clear that the jury based its verdict on the § 922(g) counts of the superseding indictment on evidence indicating that Hall was aware that he was not allowed to be in possession of a firearm. When attempting to prove that Hall previously had been convicted of a felony, the government elicited the testimony of Hall's parole officer, who explained that one of Hall's prior convictions was for a 2015 case in which Hall was charged with robbery, aggravated robbery, and *having weapons while under disability*. Therefore, the jury was aware that Hall knew in 2018 that he was not permitted to possess a firearm.[3]

### 4. Possession of a Firearm in Furtherance of Drug-Trafficking Activity (1 Count)

In his final challenge to the evidence used to convict him, Hall alleges that the government failed to prove any nexus between the two firearms found during the searches of July 3, 2018, and the drug-trafficking crimes with which he was charged. Thus, he argues that the evidence did not establish, as required by the provisions of 18 U.S.C. § 924(c)(1)(A), that the guns were used to further any drug activity.

In order to prove a § 924(c)(1) violation, "[t]he government must clearly show that a firearm was possessed to advance or promote the commission of the underlying offense. The mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing"

---

[3] We also note that Hall's sentence was not increased due to the § 922(g) convictions. The district court ordered the 120-month sentences for the two felon-in-possession counts to run concurrently with the 360-month sentences imposed for the drug-distribution offenses and the possession-with-intent-to-deliver offenses.

the section's mandatory sentence. *United States v. Mackey*, 265 F.3d 457, 461 (6th Cir. 2001) (quoting H.R. Rep. No. 105-344 (1997), 1997 WL 668339, at \*11–12 (footnote omitted)). In other words, the purpose of the firearm must be "to provide defense or deterrence in furtherance of the drug trafficking for which defendant was arrested." *Id.* at 462–63. "In order for the possession to be in furtherance of a drug crime, the firearm must be strategically located so that it is quickly and easily available for use." *Id.* at 462 (citation omitted). Other factors that we have found to "be relevant for a determination of whether the weapon was possessed in furtherance of the crime include whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found." *Id.*

Applying those lessons from our *Mackey* precedent, we conclude that the jury appropriately convicted Hall of possession of the Beretta and Walther Arms pistols in furtherance of drug-trafficking offenses. Law enforcement officers found the Beretta in a bag Hall had been carrying that contained, at that very time, a distribution quantity of marijuana. They also recovered the Walther Arms pistol from a shelf of a table on which drugs were repackaged for resale and on which approximately $6,000 in cash was found. In both instances, the guns were placed so that Hall would have quick and easy access to them. Furthermore, both guns were semi-automatic pistols, both were fully loaded, and neither weapon could have been possessed legally by Hall. Like Hall's other attempts to undermine the jury's guilty verdicts, his attack on the sufficiency of the evidence to convict him of possession of firearms in furtherance of drug-trafficking crimes thus is without merit.

**Propriety of the Sentence Imposed Upon Hall**

Before this court, Hall also challenges the propriety of the 444-month sentence imposed upon him by the district court. Specifically, he alleges that the severity of his sentence vindictively

was increased because he chose to exercise his constitutional right to a jury trial and that the lengthy sentence was substantively unreasonable. We find no merit to either allegation of error.

### 1. Alleged Vindictiveness of the Sentence

The Sixth Amendment to the United States Constitution grants to criminal defendants the right to a trial by an impartial jury. The principle of law is well established that a court may not increase a defendant's sentence in retaliation for the exercise of that constitutional right. *See, e.g.*, *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). Hall submits, however, that the district court's 444-month sentence in this case was imposed simply because he chose to exercise his Sixth Amendment right rather than accept a pretrial plea agreement with the prosecution.

As set forth earlier, the government first proposed to allow Hall to request a prison sentence of 188 months for pleading guilty to the original four-count indictment. When those negotiations proved to be unfruitful, the government filed its 14-count superseding indictment and proposed a 211-month sentence in exchange for a guilty plea from Hall. Clearly, such actions by the prosecution in this case are neither unconscionable nor vindictive as long as the defendant "is free to accept or reject the prosecution's offer." *Id.* As the United States Supreme Court explained in *United States v. Goodwin*, 457 U.S. 368, 379–80 (1982):

> Since charges brought in an original indictment may be abandoned by the prosecutor in the course of plea negotiation—in often what is clearly a "benefit" to the defendant—changes in the charging decision that occur in the context of plea negotiation are an inaccurate measure of improper prosecutorial "vindictiveness." An initial indictment—from which the prosecutor embarks on a course of plea negotiation—does not necessarily define the extent of the legitimate interest in prosecution. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded.

(Footnotes omitted.)

Nor was the decision of the government after trial to seek a sentence within the relevant United States Sentencing Guidelines range of 360-months-to-life-in-prison indicative of a vindictive intent. In its investigation and eventual prosecution of defendant Hall, the government relied in part on information provided by two confidential informants. The decision to offer a plea deal to a large-scale drug dealer with a long history of criminal activity stemmed in large part from a desire to protect the identities of those informants. In the end, only one of the confidential informants was identified and called to testify at trial, but the desire to prevent discovery of their identities by avoiding a trial does not smack of the unconscionable vindictiveness that will result in a judicial finding of a constitutional violation. *See United States v. Suarez*, 263 F.3d 468, 480 (6th Cir. 2001) ("[A]voidance of trial as a prosecutorial stake is implicit in the plea bargaining process, and therefore exempt under *Bordenkircher* from being held vindictive.").

### 2. Alleged Unreasonableness of the Sentence

Hall also argues that the 444-month sentence imposed upon him is substantively unreasonable and should be recalculated. We review a challenge to the substantive reasonableness of a sentence under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). In doing so, we determine whether the district court "placed too much weight on some of the [18 U.S.C.] § 3553(a) [sentencing] factors and too little on others." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir.), *cert. denied*, 139 S. Ct. 264 (2018). "Needful to say, this is a matter of reasoned discretion, not math . . . ." *Id.*

The starting point for determining the reasonableness of a sentence "is the Guidelines range, because in the ordinary case, the [Sentencing] Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020) (internal

quotation marks and citations omitted). Consequently, a sentence within the applicable Guidelines range will be presumed to be reasonable. *United States v. Christman*, 607 F.3d 1110, 1118 (6th Cir. 2010).

Pursuant to the provisions of the United States Sentencing Guidelines, the district court appropriately deemed Hall to be a career offender because:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). Furthermore, because one of Hall's present convictions was for an 18 U.S.C. § 924(c) offense (possession of a firearm in furtherance of a drug-trafficking offense), the applicable Guidelines range became 360-months-to-life. U.S.S.G. § 4B1.1(c)(3). Any prison sentence of at least 360 months thus is presumed to be reasonable in this case.

Despite the severity of a 360-month (30-year) sentence, the district court determined that an even harsher sentence should be imposed upon Hall. In arriving at that conclusion, however, the district court engaged in a thorough examination of the sentencing factors listed in 18 U.S.C. § 3553(a). Specifically, the district court emphasized Hall's extensive criminal record, the serious nature of the present offenses, his disregard for the law as shown by the fact that Hall continued to commit crimes while released on bond, the need to impose a just punishment on the defendant, and the need to protect the public from further transgressions at Hall's hands.

The district court expressed alarm that the then-29-year-old defendant, since the age of 18, already had been convicted of seven drug offenses, had "two weapons convictions, robbery and aggravated robbery convictions[,] and a felony conviction for intimidation of a crime victim or witness." Yet, despite those convictions and the resulting periods of imprisonment, Hall continued to commit similar offenses, often while released on bail pending trial. Also factoring into the

district court's sentencing calculus was the fact that Hall was arrested for dealing fentanyl, an extremely lethal drug.  In light of those considerations, we cannot conclude that the district court abused its discretion in imposing a presumptively reasonable, within-Guidelines sentence in this matter.  Hall's challenge to the reasonableness of his prison sentence thus also is without merit.

## CONCLUSION

For the reasons stated, we conclude that the government adduced sufficient evidence in this case to support the verdicts against defendant Hall.  We also find no vindictiveness nor an abuse of discretion in the district court's imposition of the 444-month sentence.  We thus **AFFIRM** the judgment of the district court.